DOUGLAS S. WHEELING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wheeling v. Commissioner
Docket No. 953-81.
United States Tax Court
T.C. Memo 1982-246; 1982 Tax Ct. Memo LEXIS 502; 43 T.C.M. (CCH) 1302; T.C.M. (RIA) 82246; May 4, 1982. Douglas S. Wheeling, pro se. Clyde W. Mauldin, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to the tax under section 6651(a) and section 6653(a) of the Code, [1] as follows: *503 Deficiencies
Additions to the
Additions to the
Year
in Tax
Tax (Section 6651(a))
Tax (Section 6653(a))
1970
$ 1,686.98
$ 421.75
$ 84.35
1971
1,701.80
425.45
85.09
1972
1,763.86
440.97
88.19
1973
2,052.76
513.19
102.64
1974
2,501.67
625.42
125.08
1975
2,615.22
653.81
130.76
1976
2,778.06
694.52
138.90
TOTALS
$ 15,100.35
$ 3,775.11
$ 755.01
The issues for decision by the Court are: (1) Whether petitioner had unreported income for each year and, if so, whether respondent correctly computed the amount of the income on the basis of the Bureau of Labor Statistics - Intermediate Budget - Metropolitan Area - figures for a family of four; (2) Whether petitioner's failure to file returns was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a); and (3) Whether petitioner's underpayments of tax were not due to negligence or intertional disrepard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT At the time he filed his petition in this case, Douglas S. Wheeling (hereinafter petitioner) resided in Pontiac, Michigan. During the years 1970 through *504 1976, petitioner was married to Sylvia A. Wheeling, and they had two children. Mrs. Wheeling was a homemaker and did not work outside of the home. Petitioner was self-employed as a carpenter, engaged in residential remodeling work. Although not licensed to perform electrical wiring and plumbing work, he did such work as well as the carpentry work in the remodeling jobs. Petitioner did not engage in new-home construction. Petitioner and his family did not seek nor receive any welfare payments or public assistance during the years 1970 - 1976. For the calendar year 1970, petitioner filed no Federal individual income tax return. For the calendar year 1971, there was filed a Form 1040, U.S. Individual Income Tax Return, bearing an address label containing the names Douglas S. and Sylvia A. Wheeling. That form contained petitioner's social security number, an entry reflecting his occupation as a self-employed carpenter, a check in the box for "Married filing jointly," and no figures or other information. That Form 1040 was not signed but a date of "4-15-72" was entered next to the signature line. For the calendar year 1972, petitioner signed and filed a Form 1040 bearing his *505 name, address, social security number, and occupation, but no figures or other information. Written across that Form 1040 was the statement "I intend to file an amended return." The Form 1040 for 1972 was dated April 16, 1973 but was not received by the Internal Revenue Service until April 19, 1974. No amended return was ever filed for the calendar year 1972. For the calendar year 1973, petitioner and his wife signed and filed a Form 1040, containing their names, address, social security numbers, their occupations (carpenter and housewife, respectively), and filing status (married filing joint return) but no figures or other information. Written on that Form 1040 was the statement "I intend to file an amended return." No amended return was ever filed for the calendar year 1973. For the calendar year 1974, petitioner and his wife signed and filed a Form 1040, that contained no figures and no other information except the mailing label which bore their names, address, and social security numbers. For the calendar year 1975, petitioner and his wife filed a Short Form 1040A, U.S. Individual Income Tax Return, containing the mailing label with their names, address, and social security *506 numbers, their occupations (carpenter and housewife, respectively), information requested by the Census Bureau for Revenue Sharing, and their filing status (married filing joint return), but no figures and no other information. For the calendar year 1976, petitioner alone filed a Form 1040A containing just his social security number but no figures or other information. For each of the years 1970 through 1976, petitioner failed to report adequate information as to his gross income, business expenses, or personal itemized deductions. During the audit, petitioner submitted only fragmentary records for only two of the taxable years. For the calendar year 1972, petitioner submitted a business journal for most of the year, up through November of 1972. That business journal was not complete, but contained information as to some gross receipts and some business expenses. That fragmentary record showed gross receipts of $ 10,961.20 and expenses of $ 3,356.80, for net business income of $ 7,604.40 for that period of 1972. During the audit, petitioner argued that the social security tax was unconstitutional and disagreed with various aspects of the tax laws, asserting that he would not *507 sign or file tax returns until the tax laws were changed. However, at a subsequent meeting during the audit, petitioner brought in for the taxable year 1973 some bank statements, canceled checks, and a receipt for interest paid on his house in that year in the amount of some $ 2,400. However, when the auditor began going through the bank statements and canceled checks, petitioner became irate and uncooperative, and refused to let respondent's personnel complete the inspection of those documents. From the incomplete review of these materials, it appeared that petitioner had net business income for 1973 of at least $ 10,000. Petitioner halted the inspection of his records, making various constitutional arguments against the tax laws, and particularly complaining about the fact that the country was no longer on the gold standard and arguing that he did not consider Federal Reserve Notes to be money. In any event, for whatever reason, petitioner did not permit respondent's personnel to complete the examination of the records he had for the year 1973. Petitioner never thereafter furnished any additional records or information as to his gross receipts, business expenses, or personal *508 itemized deductions for any of the years involved in this case. Respondent thereupon computed petitioner's income for each year, using Bureau of Labor Statistics - Intermediate Budget - Metropolitan Area - Family of Four, as follows: COMPUTATION OF INCOME FOR THE TAXABLE YEARS ENDED DECEMBER 31, ITEM
1970
1971
1972
Total Budget
$ 10,933.00 $ 11,232.00 $ 11,731.00 Total Family Consumption
$ 8,382.00 $ 8,821.00 $ 9,228.00 Food
$ 2,491.00 $ 2,575.00 $ 2,713.00 Housing
2,579.00 2,723.00 2,910.00 Transportation
916.00 969.00 985.00 Clothing
1,153.00 1,214.00 972.00 Personal Care
266.00 Medical Care
582.00 633.00 653.00 Other Family Consumption
661.00 709.00 729.00 Other Items
576.00 567.00 584.00 Social Security and
Disability Taxes
389.00 421.00 483.00 Personal Income Taxes
1,586.00 1,421.00 1,435.00 TOTAL
$ 10,933.00 $ 11,232.00 $ 11,731.00 Less: Taxes not paid
( 1,975.00)
( 1,842.00)
( 1,918.00)
ADJUSTMENT GROSS INCOME
$ 8,958.00 $ 9,390.00 $ 9,813.00 ITEM
1973
1974
Total Budget
$ 12,626.00 $ 14,644.00 Total Family Consumption
$ 9,761.00 $ 11,096.00 Food
$ 3,183.00 $ 3,599.00 Housing
2,908.00 3,327.00 Transportation
1,014.00 1,174.00 Clothing
995.00 1,101.00 Personal Care
275.00 315.00 Medical Care
664.00 763.00 Other Family Consumption
722.00 815.00 Other Items
611.00 670.00 Social Security and
Disability Taxes
647.00 787.00 Personal Income Taxes
1,607.00 2,089.00 TOTAL
$ 12,626.00 $ 14,644.00 Less: Taxes not paid
( 2,254.00)
( 2,876.00)
ADJUSTMENT GROSS INCOME
$ 10,372.00 $ 11,768.00 *509 ITEM
1975
1976
Total Budget
$ 15,638.00 $ 16,236.00 Total Family Consumption
$ 11,951.00 $ 12,370.00 Food
$ 3,875.00 $ 3,859.00 Housing
3,633.00 3,843.00 Transportation
1,283.00 1,403.00 Clothing
1,114.00 1,141.00 Personal Care
337.00 355.00 Medical Care
848.00 900.00 Other Family Consumption
861.00 869.00 Other Items
709.00 731.00 Social Security and
Disability Taxes
841.00 898.00 Personal Income Taxes
2,136.00 2,236.00 TOTAL
$ 15,638.00 $ 16,236.00 Less: Taxes not paid
( 2,977.00)
( 3,134.00)
ADJUSTMENT GROSS INCOME
$ 12,661.00 $ 13,102.00 NOTE: Because of rounding, sums of individual items may not equal total. Respondent computed the deficiencies in petitioner's Federal income tax on the basis of the above adjusted gross income figures, using the rates for a married person filing separately and allowing petitioner the standard deduction and four exemptions each year. Respondent also computed petitioner's self-employment tax and imposed additions for delinquency and negligence under sections 6651(a) and 6653(a). OPINION For the years 1970 through *510 1976, petitioner was a self-employed carpenter and failed to file proper tax returns. He filed no return for 1970 and for the years 1971 through 1976 he filed Forms 1040 or 1040A that contained no figures or other information from which his tax could be computed. It is well-established that such documents do not constitute "returns." Jarvis v. Commissioner,78 T.C. No. 45 (April 22, 1982); United States v. Porth,426 F. 2d 519, 523 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970). Petitioner readily agrees that he has not filed any tax returns. He argues, moreover, that since he failed to file returns, respondent therefore cannot determine any deficiency under section 6211, and cannot impose delinquency or negligence additions under sections 6651(a) or 6653(a). Needless to say, petitioner's reading of these provisions of the Internal Revenue Code is not only novel but plainly wrong. [2]
*511 Section 6001 and the pertinent regulations require all taxpayers to keep such permanent books of account or records as are necessary to establish the amount of gross income, deductions, credits, or other matters required to be shown on their tax returns. Sec. 1.6001-1(a), Income Tax Regs. In the absence of such records, respondent can use various indirect methods of proof to reconstruct the taxpayer's income. One such method that has been approved by this Court is the method used in this case, namely the use of Bureau of Labor Statistics. Giddio v. Commissioner,54 T.C. 1530 (1970).[3] This method is not arbitrary. On the contrary, this method is based on the reasonable assumption that the taxpayer had income at least equal to the normal cost of supporting his family. That assumption is reasonable here, since petitioner insisted that he always supported himself and his family and had never received welfare or public assistance payments. Petitioner bears the burden of proof to show that respondent's determinations are incorrect. Welch v. Helvering,290 U.S. 111, 115 (1933); *512 Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner has not sustained his burden. Petitioner presented no evidence at all in regard to the amounts or sources of his income, any business expense deductions, or any allowable Schedule A itemized deductions. [4]
*513 Moreover, the record such as it is supports respondent's determinations. The few fragmentary records for 1972 and 1973 that petitioner produced during the audit tend to confirm the reasonableness of respondent's reconstruction of his income. The incomplete business journal for 1972 showed gross receipts of $ 10,961.20, business expenses of $ 3,356.80, and net business income of $ 7,604.40 for 11 months of that year.Respondent's use of an adjusted gross income figure of $ 9,813 for 1972 is reasonably close. For 1973 a review of the records petitioner initially presented but then took away from respondent's auditor indicated net business income of at least $ 10,000 for that year. Thus respondent's use of an adjusted gross income figure of $ 10,372 for 1973 is entirely reasonable. If petitioner has business records and fails or refuses to present them, the Court would be warranted in presuming that his records do not support his position. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946). However, we need not draw any adverse inferences in this case. Petitioner had the burden of proof and simply failed to sustain it. The Court has no choice *514 except to sustain respondent's determinations. Petitioner also has the burden of proof to show that his failure to file proper returns was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a). Fischer v. Commissioner,50 T.C. 164, 177 (1968). He failed to sustain his burden. Similarly, petitioner has the burden to establish that his underpayments of tax were not due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Again he failed to carry his burden. In fact the record clearly establishes that both the delinquency and negligence additions were properly imposed in this case. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years involved in this case, unless otherwise stated.↩
2. Petitioner argued throughout the trial that the various legal arguments he presented were evidence because he had been placed under oath and was "presenting sworn testimony." Despite the Court's repeated urging that he present some facts in regard to his income, deductions, or other matters relating to his tax liability, petitioner persisted with these and other frivolous legal arguments throughout the entire trial. Petitioner remonstrated to the Court: "Your Honor, I might even come across something here accidentally, you know." That seems to have been petitioner's hope, but if so petitioner in the words of the poets must "bid farewell to hope." The tax laws of this country cannot be thwarted by the simple expedient of not filing tax returns or filing essentially blank tax forms.↩
3. See also Kindred v. Commissioner,T.C. Memo. 1979-457↩.
4. The only specific item in the record is a possible interest deduction for the year 1973. Petitioner did at one point during the audit bring in a receipt for payment of interest on his home in the amount of some $ 2,400. That figure would have been more than the $ 1,000 standard deduction allowed for that year, and petitioner would have been entitled to the deduction if he had presented the receipt or other evidence substantiating the amount of his interest expense for the year. However, petitioner apparently took even those fragmentary records away from respondent's auditor, and the receipt for interest was not offered in evidence at the trial. On the record that petitioner chose to make at the trial, the Court cannot allow the larger deduction.The Court regrets that petitioner did not present whatever evidence he may have had (see footnote 2 above), but the Court must base its decision on the facts in the record.↩