116 F.3d 1309
 80 A.F.T.R.2d 97-5100, 97-2 USTC P 50,550,
97 Cal. Daily Op. Serv. 5264,
97 Daily Journal D.A.R. 8562
 Angela PALMER, in her representative capacity as Trustee of
the Paul B. Palmer, Jr. Family Preservation Trust, Plaintiff,
v.
UNITED STATES INTERNAL REVENUE SERVICE, Defendant-Appellee.
UNITED STATES of America, Counter-claimant- Appellee,
v.
Paul B. PALMER, Jr., Counter-defendant- Appellant.
 No. 95-35297.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided July 2, 1997.
 
 Paul B. Palmer, Jr., Kooskia, ID, pro se, for Counter-Defendant-Appellant.
 John A. Nolet, Tax Division, United States Department of Justice, Washington, DC, for Defendant-Appellee.
 Appeal from the United States District Court for the District of Idaho; Edward J. Lodge, District Judge, Presiding. D.C. Nos. CV-86-03045-EJL, CV-86-1361-EJL.
 Before: WRIGHT, BRUNETTI and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether the Internal Revenue Service made proper deficiency determinations and assessments for unpaid taxes against non-cooperative taxpayers.
 
 
 2
 * Paul and Angela Palmer failed to file tax returns from which their income could be determined for the years 1976 through 1979. Internal Revenue Service ("IRS") agents attempted to meet with the Palmers to gather income information, but the Palmers did not attend the scheduled meeting.
 
 
 3
 IRS employees then conducted an investigation seeking income information from the four unreported years, with limited success. Agents contacted the Idaho Department of Employment, several area employers, and the electrician's union. They discovered $2,627 in wages in 1976, and information suggesting that Paul Palmer worked for wages in 1979. The bookkeeper at a local logging company was interviewed and informed an agent that she was a neighbor of the Palmers and believed that Paul Palmer worked as a self-employed electrician.
 
 
 4
 Because IRS agents were not able to uncover reliable income information, they decided to reconstruct the Palmers' income with statistics. The agents found the national "median household income" as reported by the U.S. Census Bureau for the years 1976 and 1977, and figured the median income for 1978 and 1979 through the use of the Consumer Price Index. These figures were treated as the Palmers' income. Through this method, the IRS determined that the Palmers had the following taxable income: $12,686 in 1976; $13,572 in 1977; $15,573 in 1978; and $17,495 in 1979.
 
 
 5
 Deficiency notices were prepared and mailed to the Palmers' last known address on July 28, 1981. They listed deficiencies for unpaid individual income taxes in the amount of $16,558 for Paul Palmer and $3,610 for Angela Palmer, plus a combined total of $5,042 in penalties. The Palmers did not respond to the deficiency notices, which were returned to the IRS marked "unclaimed."
 
 
 6
 In April 1982, after the statutory period for objecting to the deficiency notices had passed, the IRS prepared assessments against the Palmers in the combined amount of $33,794.51 representing the couple's unpaid taxes, penalties, and interest. The assessments gave rise to liens for the amounts owed. On February 12, 1986, the IRS filed liens in the Office of the County Recorder for Idaho County, Idaho against a parcel of real property owned by the Paul B. Palmer, Jr. Family Preservation Trust. Angela Palmer, in her capacity as a trustee, filed a wrongful levy action in the district court on April 23, 1986, on the ground that the property belonged to the Trust, rather than to the Palmers.
 
 
 7
 In March 1988, the government filed a counterclaim to enforce the liens and a third-party complaint against Paul and Angela Palmer, in their individual capacities, seeking to reduce to judgment the federal tax assessments. On February 9, 1990, the government moved for partial summary judgment of their third party claim for the amount of the unpaid assessed taxes, penalties, and interest which the district court granted on April 4, 1991.
 
 
 8
 Several motions followed, with the Palmers repeatedly raising many objections to the district court's summary judgment order, in addition to pre-trial motions regarding the property held in trust.
 
 
 9
 Finally, in early 1995, the parties stipulated to a settlement of all remaining issues not included in the partial summary judgment order. On February 6, 1995, the district court issued an order dismissing the Trust's wrongful levy action and the government's counterclaim regarding the liens. On February 9, 1995, the court entered final judgment for the United States in the revised amounts of $54,903.68 and $22,791.60, plus continuing interest, against Paul and Angela Palmer respectively. The Palmers timely appeal.
 
 II
 
 10
 As an initial matter, we must consider the Palmers' arguments that the district court lacked subject matter jurisdiction over the government's counterclaim and third party complaint. The Palmers argue that the record fails to establish that the IRS complied with the procedural requirements for bringing a civil action under 26 U.S.C. §§ 7401 and 7403.
 
 
 11
 Sections 7401 and 7403 of the Internal Revenue Code require that civil actions for the collection of taxes and enforcement of liens be instituted at the direction of delegates of the Attorney General and the Secretary of the Treasury. The government has produced redacted copies of two letters, which taken together, show that the government complied with these statutory requirements. Furthermore, the Palmers have failed to produce any evidence that would counter the normal presumption of regularity that attaches to the actions of public officers. See United States v. Chemical Foundation, 272 U.S. 1, 14-15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). Therefore, the district court properly concluded that the IRS had complied with the applicable procedural requirements and that the court had jurisdiction over the government's claims.
 
 III
 
 12
 We next must determine, viewing the evidence in the light most favorable to the Palmers, whether there are any genuine issues of material fact precluding summary judgment and whether the district court correctly applied the relevant substantive law. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996).
 
 
 13
 The district court granted the government summary judgment because the Palmers failed to rebut the presumption of correctness that normally attaches to IRS assessments. U.S. v. Stonehill, 702 F.2d 1288, 1293 (9th Cir.1983), cert. denied, 465 U.S. 1079, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984). On appeal, the Palmers argue that summary judgment was inappropriate because alleged IRS errors prevented the presumption of correctness from attaching and because of alleged procedural defects. These contentions will be addressed in turn.
 
 
 14
 * The Palmers first argue that the district court erred in granting summary judgment because the method used by the IRS in reconstructing their income was unreasonable. In an action to collect taxes, the government bears the initial burden of proof. Stonehill, 702 F.2d at 1293. The Commissioner's deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation. Id. The presumption shifts the burden of proof to the taxpayers to show that the determination is incorrect. Id.; Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir.1985).
 
 
 15
 The Palmers argue that the presumption of correctness should not be granted in this case because the attribution to them of national median household income is not a rational method for reconstructing their income. A showing by the taxpayer that a determination is arbitrary, excessive or without foundation shifts the burden of proof back to the IRS. Helvering v. Taylor, 293 U.S. 507, 515-516, 55 S.Ct. 287, 290-291, 79 L.Ed. 623 (1935); Adamson v. Commissioner, 745 F.2d 541, 547 (9th Cir.1984).
 
 
 16
 Congress specified no particular methods or evidentiary burdens on the Commissioner when choosing a method for reconstructing a taxpayer's income under Section 446. The Commissioner, therefore, has wide discretion in choosing an income-reconstruction method. Petzoldt v. Commissioner, 92 T.C. 661, 693, 1989 WL 27845 (1989). Where the Commissioner's method of calculating income is rationally based, courts afford a presumption of correctness to the Commissioner's determination. Cracchiola v. Commissioner, 643 F.2d 1383, 1385 (9th Cir.1981) (per curiam). The taxpayer has the burden of proving the method to be wrong. Id.
 
 
 17
 Courts have long held that the IRS may rationally use statistics to reconstruct income where taxpayers fail to offer accurate records. See Edwards v. Commissioner, 680 F.2d 1268, 1270-71 (9th Cir.1982); United States v. McMullin, 948 F.2d 1188, 1192, n. 3 (10th Cir.1991). Reasonable methods include the use of cost-of-living statistics for a particular locale, Wheeling v. Commissioner, 43 T.C.M. (CCH) 1302 (1982), or average local income statistics for a particular profession. Horner v. Commissioner, 50 T.C.M. (CCH) 285 (1985).
 
 
 18
 When taxpayers have challenged income reconstructions based on statistics, courts have affirmed the determinations where the statistics are reasonably employed. Cracchiola, 643 F.2d at 1385; see also Spurgeon v. Commissioner, 62 T.C.M. (CCH) 1412 (1991); Giddio v. Commissioner, 54 T.C. 1530, 1532, 1970 WL 2187 (1970). In the Palmers' case, the government has offered no explanation for its choice of national median household income statistics to reconstruct the Palmers' income, nor has it offered any evidence suggesting that these statistics represent a rational method for approximating the correct amount. The government also concedes that no court has previously affirmed this method. We would therefore be inclined to agree with the Palmers that simply attributing median national income statistics to the taxpayers is not a rational method for reconstructing the Palmers' income, were the question properly before us.
 
 
 19
 However, although the government did not object to our consideration of the issue, a review of the record reveals that the Palmers have waived their right to appeal the district court's conclusion that the deficiency determination was entitled to the presumption of correctness. The Palmers first raised the issue of the method's reasonableness in a motion which the district court refused to consider because it was untimely and in contravention of local rules. The Palmers did not appeal this ruling, with the result that the court did not consider the Palmers' arguments on this question.[1] Generally, matters not properly considered by the district court may not be raised for the first time on appeal. United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990). The Palmers have therefore waived their challenge to the rationality of the method used to reconstruct their income.
 
 B
 
 20
 Next, the Palmers argue that the assessment is wholly invalid because the government has failed to offer sufficient evidence linking the Palmers to income-generating activities. Their protestations are unavailing.
 
 
 21
 Where the IRS bases its assessment on an allegation of unreported income, the Service must show some minimal evidence linking the taxpayer to the source of that income before the presumption of correctness will attach. Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir.1979). In Weimerskirch, we held that the IRS may not base its deficiency determination on an allegation that the taxpayer dealt in illegal drugs where no evidence linking the taxpayer to drug trafficking was offered.[2] Most, but not all, of the cases requiring this evidentiary foundation have involved illegal sources of unreported income. See e.g. Edwards, 680 F.2d at 1270 (requiring an evidentiary foundation where a taxpayer has failed to report legal sources of income).
 
 
 22
 Through investigative efforts, the IRS was able to uncover evidence that Paul Palmer worked for wages in at least part of 1976 and 1979, and evidence suggesting that he was a self-employed electrician. No information relating to specific employment was found for the years 1977 and 1978.
 
 
 23
 The Palmers rely on the Weimerskirch line of cases to argue that the IRS must continue its investigative task until the exact sources of their income are uncovered for each of the four years before the presumption of correctness will arise. Unlike the situation in Edwards or Weimerskirch, however, the IRS has reconstructed the Palmers' income with statistics alone, based on the reasonable inference that since they were able to survive from 1976 to 1979, they must have had some income. The Palmers have not denied this premise, but instead urge that the government's task is to discover the exact source of the income which they have thus far succeeded in concealing. Nor have the Palmers suggested that they had alternative means of support in the absence of income for the years at issue.
 
 
 24
 Where the government's deficiency determination rests on the reasonable inference that the taxpayers must have had sufficient income to support themselves for years when no income was reported, and statistics are used to reconstruct income, the evidentiary foundation necessary for the presumption of correctness to attach is minimal. See Pollard v. Commissioner, 786 F.2d 1063, 1066 (11th Cir.1986); Giddio, 54 T.C. at 1532. When this reasonable inference is coupled with the information linking Paul Palmer to wages for at least part of the four-year period, a sufficient evidentiary foundation has been established for the presumption of correctness to attach to the assessments. Of course, this presumption creates only a prima facie case, which shifts the burden to the taxpayers to rebut by showing that the inference is unreasonable in their case. See Pollard, 786 F.2d at 1066.
 
 C
 
 25
 Next, the Palmers argue that the IRS has failed to offer sufficient evidence to prove that agents actually made a determination of deficiency against them, and that the court therefore lacks jurisdiction over this case. This is a frivolous claim.
 
 
 26
 Internal Revenue Code § 6212 requires the IRS to consider information relating to a particular taxpayer when making a determination of deficiency. Scar v. Commissioner, 814 F.2d 1363, 1368 (9th Cir.1987). In Scar, we held that the Commissioner could not show that a deficiency had actually been determined where the face of the deficiency notice revealed that it was based on erroneous information, and that the taxpayers' return had not even been reviewed by the agent making the determination. Id. at 1367. We dismissed because an initial determination of deficiency is a jurisdictional requirement. Id. at 1370. The Palmers argue that, since the IRS based its deficiency determination on statistics rather than on actual evidence of their concealed income, the IRS has failed to meet the required showing of Scar, and that we must dismiss for lack of jurisdiction.
 
 
 27
 Were the Palmers correct, the IRS would never be able to collect taxes owed by those who, like them, illegally hide their income to avoid paying taxes, all the while taking advantage of the many privileges enjoyed by law-abiding citizens. The cases approving the reasonable use of statistics in reconstructing the income of non-cooperative taxpayers demonstrate the fallacy of the Palmers' argument.
 
 
 28
 The IRS introduced the working papers, notes, and a signed declaration of the agents who conducted the investigation and prepared the deficiency determinations and assessments against the Palmers. The Palmers have offered nothing to counter this evidence showing that a determination was actually made in their case, but once again, demand more evidence. None is necessary under Scar, as the IRS has more than met the evidentiary standards of that case.
 
 IV
 
 29
 The Palmers' remaining arguments, that the IRS failed to mail notices to their last known address, that the assessments were not made by delegates of the Secretary, and that they are not subject to any internal revenue tax, are frivolous. As the government has not requested that we impose costs for the frivolous nature of these arguments on appeal, we will not sua sponte do so.
 
 V
 
 30
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In ruling on still another of the Palmers' motions, the district court held that the IRS reconstruction of the Palmers' income was entitled to the presumption of correctness and that the Palmers had failed to rebut this presumption. It also instructed the IRS to recalculate the Palmers' income because it had incorrectly based its determinations on 150% of Paul Palmer's estimated income. The Palmers did not appeal the court's ruling on this motion
 
 
 [2]
 In Weimerskirch the government sought to shield the identity of informants, with the result that it had no evidence it could offer linking the taxpayer to the illicit source of income. We declined to allow the IRS to rest on the presumption of correctness without some minimal evidentiary foundation. 596 F.2d at 360