T.C. Memo. 2001-308



UNITED STATES TAX COURT



LAUREL ANN CURTIS, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]



Docket No. 11125-95.                    Filed December 3, 2001.



        On remand from the Court of Appeals for the Ninth
Circuit to elaborate the evidence relied on by the
Court in Curtis v. Commissioner, T.C. Memo. 1996-484,
revd. and remanded without published opinion 232 F.3d
893 (9th Cir. 2000), to conclude that respondent had
provided the minimal evidentiary foundation supporting
his determination of unreported income.  See
Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir.
1979), revg. 67 T.C. 672 (1977).
        Held:  Findings made to support conclusion that
proper foundation exists.

        [*]  This opinion supplements Curtis v. Commissioner, T.C.
Memo. 1996-484, revd. and remanded without published opinion 232
F.3d 893 (9th Cir. 2000).

Laurel Ann Curtis, pro se.

Brenda M. Fitzgerald, for respondent.


SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  This case has been remanded by the Court of Appeals for the Ninth Circuit (sometimes the Court of Appeals). Our original report is Curtis v. Commissioner, T.C. Memo. 1996-484 (the original report), revd. and remanded without published opinion 232 F.3d 893 (9th Cir. 2000).  In the original report, we sustained respondent's determinations of deficiencies in Federal income tax for petitioner's taxable years 1983 through 1993, as well as respondent's determinations of additions to tax for each of those years under sections 6651(a)(1) (failure to file return) and 6654(a) (failure to pay estimated tax).  We also found that petitioner's position in this case was both frivolous and groundless, and that petitioner had undertaken certain actions primarily for delay.  On account thereof, we imposed a penalty on petitioner under section 6673(a)(1).

This case involves unreported income.  In the original report, we recognized that any appeal would likely lie to the Court of Appeals for the Ninth Circuit.  We stated:

> The general rule is that the burden of proof is upon petitioner, Rule 142(a), which she must carry by a preponderance of the evidence, e.g., Schaffer v. Commissioner, 779 F.2d 849, 858 (2d Cir. 1985), affg. in part and remanding Mandina v. Commissioner, T.C.

> Memo. 1982-34. * * * Under <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), to which we defer in accordance with the doctrine of <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we must examine the record to determine whether there is a minimal evidentiary foundation supporting respondent's determination of unreported income. If there is not, respondent's determination will be deemed arbitrary and, consequently, she will lose her presumption of correctness and will be forced to go forward with the evidence. <u>Weimerskirch v. Commissioner</u>, <u>supra</u>. The record, however, <u>does</u> contain evidence supporting respondent's determination of unreported income, and, therefore, the burden of proof remains entirely with petitioner.

<u>Commissioner v. Curtis</u>, <u>supra</u> (fn. ref. omitted). The Court of Appeals remanded for us to elaborate on the evidence supporting respondent's determination of unreported income. We shall make certain findings of fact and then discuss our basis for concluding that the record does contain evidence supporting respondent's determination of unreported income.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

<u>Petitioner's Acquisition of Rental Properties</u>

In 1970, petitioner began to acquire real estate. In petitioner's posttrial memorandum (the posttrial memorandum), she states: "By 1970 I had enough to make the down payment on a

4-plex. I kept working two jobs and bought more property." In 1996, petitioner owned at least two rental properties.

Petitioner's Decision Not To File Income Tax Returns

In the early 1980s, petitioner became convinced that the Federal income tax is voluntary. Before 1984, petitioner filed income tax returns, reporting wage and rental income, although, because of deductions, she had little taxable income and paid little tax. In 1984, petitioner made the decision not to file a return. In the posttrial memorandum, petitioner claims: "I sincerely believed then as I do now there is no dispute the Pollock decision says real estate rents could not be subject to a mandatory income tax."[1]

Petitioner did not file Federal income tax returns for her taxable (calendar) years 1983 through 1993, the years here in issue.

Respondent's Examination

In 1992, one of respondent's agents learned that, in 1990, petitioner had expended $8,000 for an automobile. The agent asked to meet with petitioner so she could explain the lack of returns. Petitioner was requested to file delinquent returns.

---

[1] Apparently, petitioner is referring to Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601 (1895), striking down the income tax enacted in 1894 as a direct tax not apportioned among the States in conformity with the Constitution. The modern income tax is not vulnerable to that attack. See U.S. Const. amend. XVI; see also Brushaber v. Union Pac. R.R., 240 U.S. 1, 17-18 (1916).

Petitioner refused to file delinquent returns because, in her own words:

> I could not truthfully and in good conscience sign a return which swore that the information was correct when I didn't know it was. For a decade I'd not kept records for tax purposes and the records I had available probably were not complete and I would not swear that they were.

On March 20, 1995, respondent issued the four notices of deficiency that give rise to this case (one each for 1983 through 1985, 1986 through 1988, 1989 through 1991, and 1992 and 1993 (collectively, the notices of deficiency).

The Petition

Petitioner filed the petition on June 22, 1995. By the petition, she assigns error to all of the determinations of deficiencies in, and additions to, tax made by respondent in the notices of deficiency, and she sets forth the following disagreement with respondent:

> I disagree with The "increase in Tax" & The "Penalties" in each year, 1983 through 1993 for the reason that more income than I earned was attributed to me in each of those years & far less expense than I incurred & am allowed to deduct was given in each of those years.

Petitioner attached to the petition only the first page of each of the notices of deficiency she received. Each of those pages states, among other things (1) the amount of the deficiency in tax and the penalty determined by respondent for each of the years stated, (2) that an enclosed statement shows how respondent

figured the deficiencies set forth, and (3) that any petition to the Tax Court be accompanied by "a copy of this letter and a copy of all statements and schedules you received with this letter".

The Posttrial Memorandum

Petitioner has attached as Exhibit A to the posttrial memorandum two pages that accompanied the notice of deficiency for 1992 and 1993. Those pages set forth respondent's adjustments, increasing petitioner's rental income, "Per Audit", in the amounts of $98,180 and $85,620, for 1992 and 1993, respectively. There is a schedule setting forth the addresses of the rental properties in question, along with amounts of rental income, rental expenses, and depreciation, for each. The following explanation follows immediately upon the statement of adjustments:

> It is determined that you received gross income from rental income as shown above. The gross income amounts have been determined according to the information available, including information provided by the payers of rental income and/or third party recordkeepers.

Respondent's Counsel's Communication to Petitioner

Brenda M. Fitzgerald is respondent's counsel in this case. By letter dated February 7, 1996, Ms. Fitzgerald answered petitioner's request that respondent provide her with specific sources and amounts from which respondent computed petitioner's deficiencies for each year. Ms. Fitzgerald enclosed with her letter a summary for each year of the figures associated with

each parcel of real estate of which respondent was aware. She added: "If you require additional information, please let me know."

Petitioner's Motion for Sanctions

On May 16, 1996, we filed petitioner's motion for sanctions against respondent for failure to litigate in good faith (the motion for sanctions), which we denied. Exhibit H accompanying the motion for sanctions purports to be a transcript (the transcript) of a meeting held on April 24, 1996, among petitioner, one of respondent's agents, and another individual. In the transcript, petitioner acknowledges receiving from respondent a breakdown of figures by property. She also appears to acknowledge that respondent's agents had contacted her former tenants to determine rents paid to her: "Well, they were willing to contact former tenants, but they weren't willing to call, for example, the Multnomah County Tax Assessor. * * * I mean they really didn't endeavor to find anything that wasn't detrimental to me."

Petitioner's Discovery

Petitioner attempted both informal and formal discovery and requested admissions from respondent (without distinction, petitioner's discovery requests). With few exceptions, petitioner's discovery requests did not seek information about or concerning the adjustments made by respondent in the notices of

deficiency.  Petitioner's discovery requests addressed constitutional and legal issues that have been settled in the Commissioner's favor or asked for information outside the scope of discovery.  For example, petitioner's interrogatories contain the following question:  "Is there an IRS Code Section that would establish a liability for an income tax?"  Among her document requests is the following:  "Please provide me with (or identify) the Code Section that requires me to keep books and records for income tax purposes."

Petitioner's Acknowledgment of Rental Income

On April 19, 1996, we filed petitioner's motion to dismiss, which we denied.  In the motion to dismiss, petitioner acknowledges her receipt of rental income.  She claims:  "<u>SINCE ALL OF THE 'INCOME' AT ISSUE WAS DERIVED FROM RENT, HOW CAN POLLOCK V. FARMERS LOAN AND TRUST CO.  * * *  NOT BE RELEVANT TO THE FACTS IN THIS CASE?</u>"  She concedes:  "all of the 'income' at issue is from 'rent' or 'income' from real estate".  She argues that respondent is seeking to impose an income tax "on the rent Petitioner derives from real estate".  She argues that respondent "[is] attempt[ing] to put an income tax on Petitioner's rental income".

Accompanying the motion for sanctions is an Exhibit G, a letter from petitioner to respondent's counsel, dated April 12, 1996, in which petitioner acknowledges her ownership of rental

property.  In that letter, in the course of making her constitutional argument, she states:  "Both <u>Pollock</u> and <u>Brushaber</u> support this conclusion and imposed the income tax on 'wages, salaries and profits from other activities'.  I have no wages, salaries or profits <u>from my rental property</u>."  (Emphasis added.)

Petitioner refused to stipulate respondent's proposed findings of fact, stating that respondent's figures for gross income were "grossly inflated".

In the posttrial memorandum, petitioner states, as a point of law:  "Petitioner's real estate rents are not subject to an income tax as a matter of law."  She argues:  "I honestly truly believe that the income tax is voluntary and that I had no legally defined income and that an unapportioned income tax can not be levied on real estate rents."

OPINION

I.  <u>Relevant Authority</u>

A.  <u>Weimerskirch v. Commissioner</u>

In <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), the Court of Appeals first stated that, in an unreported income case, before the Commissioner may enjoy the presumption of correctness that results from the burden of proof's being borne by the taxpayer (hereafter, the presumption of correctness), the Commissioner must offer some substantive evidence linking the taxpayer to an

income-generating activity.  The rule is based on the assumption that a taxpayer may have difficulty proving that he did not receive unreported income.  See <u>Karme v. Commissioner</u>, 673 F.2d 1062, 1065 (9th Cir. 1982) ("the taxpayer may face practical difficulties in attempting to refute the Commissioner's assertion that the taxpayer received unreported income" (original quotation marks omitted)), affg. 73 T.C. 1163 (1980).  The rule is satisfied if the Commissioner provides a "minimal evidentiary foundation" linking the taxpayer with the source of the income in question.  <u>Weimerskirch v. Commissioner</u>, <u>supra</u> at 361; see also <u>Palmer v. United States</u>, 116 F.3d 1309, 1313 (9th Cir. 1997).[2]

---

[2]  It appears that, in the Court of Appeals for the Ninth Circuit (the Court of Appeals), under the line of cases beginning with <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), the burden is on the Commissioner to show the link between the taxpayer and the source of the supposed income.  See, e.g., <u>Palmer v. United States</u>, 116 F.3d 1309, 1313 (9th Cir. 1997) ("Where the IRS bases its assessment on an allegation of unreported income, the Service must show some minimal evidence linking the taxpayer to the source of that income before the presumption of correctness will attach.").  In cases of unreported income governed by the jurisprudence of this Court (going behind the notice of deficiency only "[o]n rare occasions" involving "unreported <u>illegal</u> income", <u>Shriver v. Commissioner</u>, 85 T.C. 1, 3 (1985) (emphasis added)), we have held that it is the <u>taxpayer</u> who has the burden of showing that the Commissioner has failed to link him with some illegal income-generating activity.  See <u>id.</u>; see also, e.g., <u>McWilliams v. Commissioner</u>, T.C. Memo. 1995-454; <u>Jones v. Commissioner</u>, T.C. Memo. 1994-230, affd. per curiam 68 F.3d 460 (4th Cir. 1995); <u>Schaeffer v. Commissioner</u>, T.C. Memo. 1994-206; <u>Franklin v. Commissioner</u>, T.C. Memo. 1993-184; <u>Dooley v. Commissioner</u>, T.C. Memo. 1992-39; <u>Chagra v. Commissioner</u>, T.C. Memo. 1991-366, affd. without published opinion 990 F.2d 1250 (2d Cir. 1993).  Of course, under the doctrine of <u>Golsen v. Commissioner</u>, 54 T.C. 742

(continued...)

---

(1970), affd. 445 F.2d 985 (10th Cir. 1971), in cases going to the Court of Appeals, to be governed by the Weimerskirch line of cases, we defer to the Court of Appeals' allocation to the Commissioner of the burden of proof with respect to the necessary minimal foundation. We offer the following remarks, nevertheless, for consideration by the Court of Appeals.

The rule first stated in Weimerskirch results from the Court of Appeals interpretation of United States v. Janis, 428 U.S. 433, 441 (1976), a combination refund and collection case, wherein the Supreme Court held that an assessment of tax is a "naked assessment", and not subject to the usual rule imposing the burden of proof in tax cases on the taxpayer, if the assessment is "without rational foundation and excessive". See Foster v. Commissioner, 756 F.2d 1430, 1439 (9th Cir. 1985), affg. in part and vacating in part 80 T.C. 34 (1983); see also Estate of Magnin v. Commissioner, 184 F.3d 1074, 1081 (9th Cir. 1999), revg. and remanding T.C. Memo. 1996-25. In Janis, the Supreme Court stated that, notwithstanding some debate among the Courts of Appeals as to the allocation of the burden of proof in a tax case when there is positive evidence that the assessment is incorrect, there was no debate among the Courts of Appeals that, where the assessment is shown to be naked and without any foundation, the rule to be applied is the rule of Helvering v. Taylor, 293 U.S. 507 (1935). In Helvering v. Taylor, supra at 514, the Supreme Court held that an invalid determination of tax (one that is without rational foundation and excessive) may be set aside notwithstanding that the taxpayer does not show the correct amount (if any) of tax. The Court added: "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." Id. at 515.

The Court of Appeals' placement on the Commissioner of the burden to construct a minimal evidentiary foundation linking the taxpayer with the source of any unreported income appears inconsistent with the quoted language from Taylor. It is inconsistent with the general rule in deficiency cases that the taxpayer bears the burden of proof, see Welch v. Helvering, 290 U.S. 111, 115 (1933), and in refund cases that the taxpayer bears the burden of showing the amount that he is owed, see United States v. Janis, supra at 440. It is also inconsistent with Congress's intent as expressed in sec. 7491, which was added to the Code by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(2), 112 Stat. 685,

(continued...)

B.  Minimal Evidentiary Foundation

The Court of Appeals has not specified generally what constitutes the required minimal evidentiary foundation. Apparently, however, unless the taxpayer challenges the Commissioner's determination of a deficiency in tax on the merits, the Commissioner need not provide any such foundation. See Roat v. Commissioner, 847 F.2d 1379, 1383 (9th Cir. 1988) (sustaining order of Tax Court dismissing taxpayers' case for failure to prosecute).

In Rapp v. Commissioner, 774 F.2d 932 (9th Cir. 1985), which appears to involve unreported income from employment, the sale of a residence, and a business, the only evidence the Commissioner introduced consisted of documents the Commissioner had himself

---

[2](...continued)
727, and which is effective with respect to examinations commenced after July 22, 1998 (and which is, therefore, of no application to this case).  In general, and if certain prerequisites are satisfied, then, with respect to any factual issue relevant to ascertaining the liability of a taxpayer for any tax, the burden of proof with respect to that issue is on the Government, but only if the taxpayer introduces credible evidence with respect to that issue.  Sec. 7491(a)(1).

The Court of Appeals has not explained its reason for burdening the Commissioner with the obligation to show his basis for charging the taxpayer with unreported income.  It cannot be that a taxpayer is without resources, through discovery or otherwise, to determine that the Commissioner had no such basis (if, indeed, he did not).  Presumably, a determination of deficiency without basis in fact is invalid.  In Helvering v. Taylor, supra at 514, the Supreme Court said that it was "unquestionably" the burden of the taxpayer to show such invalidity.

created; i.e., deficiency notices, summonses, certain tax forms prepared by the Commissioner, and documents showing the tax calculations on which the deficiencies were based. Id. at 935. Despite the fact that, as in the instant case, no underlying third-party records were introduced linking the taxpayers with any income-producing activity, the Commissioner was entitled to rely on the presumption of correctness because the taxpayers did not directly attack that presumption. Id. The Court of Appeals took into account the fact that, in their petition, the Rapps had alleged "as one ground of error that the Commissioner failed to consider or allow for 'legitimate and proper deductions.'" Id. The Court of Appeals took the claim for deductions as evidence that there was a source of related income: "The connection between the Rapps and income-producing activity is sufficiently acknowledged to permit the presumption of correctness to attach to the Commissioner's determination." Id.

In Palmer v. United States, 116 F.3d 1309 (9th Cir. 1997), the taxpayers (husband and wife) had failed to report income for 4 successive years. The Commissioner investigated and found information that the taxpayer-husband, a self-employed electrician, had worked for wages in years 1 and 4; respondent found no information relating to specific employment during years 2 and 3. Id. at 1313. Nevertheless, the Commissioner determined deficiencies in tax for years 2 and 3, using his reconstruction

of the taxpayers' income for those years.  Id.  The
Commissioner's reconstruction was based on certain average income
statistics and the inference that, since the taxpayers were able
to survive from the end of year 1 to year 4, they must have had
some income during the intervening 2 years.  Id.  The taxpayers
did not suggest that they had alternative means of support in the
absence of income for the years in question, and the court found
the Commissioner's inference to be reasonable.  Id.  The
taxpayers argued, however, that, under the Weimerskirch line of
cases, the Commissioner was compelled to discover the exact
source of the income that he would attribute to them.  Id.  The
Court of Appeals disagreed, stating that, when the reasonable
inference made by the Commissioner was coupled with the
information linking the taxpayer-husband to wages for at least a
part of the 4-year period, the minimal evidentiary foundation
necessary to support the presumption of correctness had been
established.  Id.

Finally, in Edwards v. Commissioner, 680 F.2d 1268 (9th Cir.
1982), the Court of Appeals upheld the presumption of correctness
even though no specific income was documented, because the
taxpayers there had conceded that they owned an income-generating
auto repair business during the years at issue.

## II. Discussion

Petitioner failed to file income tax returns for the years in question, and respondent was obliged to look to other sources to determine whether petitioner owed any income taxes. Respondent determined that petitioner did owe taxes and issued the notices of deficiency. Petitioner assigned only the following error: "more income than I earned was attributed to me in each of * * * [the years in question] & far less expense than I incurred & am allowed to deduct was given in each of those years." Petitioner averred no specific facts in support of her assignment of error and did not claim explicitly that respondent's determinations were arbitrary, erroneous, or unsupported by minimal evidence. Petitioner attached to the petition the first page of each of the notices of deficiency. Those first pages show, among other things, the amount of the deficiency and penalties for each year covered by that particular notice. Each first page clearly instructs the recipient to include with any petition to the Tax Court "a copy of all statements and schedules you received with this letter". Rule 34(b)(8) likewise requires such statements and schedules to be attached to a petition. Petitioner failed to include any statement or schedule with the petition. Since petitioner attached to her posttrial memorandum as Exhibit A two pages that accompanied the notice of deficiency for 1992 and 1993, we know

that, for 1992 and 1993, those accompanying pages exist and were received by petitioner. Those pages identify as rental income the type of income that petitioner failed to report, state the addresses of the particular rental properties in question, identify an amount with respect to each such property, and explain that respondent determined those amounts from available information, including information provided by the payers of that rental income and third-party recordkeepers. We assume that similar information accompanied the notices for the other years in question, which petitioner failed to attach to the petition. Indeed, among petitioner's requests for admissions, petitioner requests that respondent: "Admit or deny that the 'rental income' stated in all Notices of Deficiency is an estimate." (Emphasis added.) Although not free from ambiguity, that request supports our assumption that petitioner received the same type of information for all of the years in issue. In any event, after the petition was filed, and before this case came on for trial, respondent's counsel provided to petitioner a summary for each year in issue of the rental amounts associated with each parcel of real estate of which respondent was aware.

We think that the notices of deficiency, together with the petition and the summary provided to petitioner by respondent's counsel, provide the minimal evidentiary foundation required by Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979). We

look to Karme v. Commissioner, 673 F.2d at 1065, for guidance as to the purpose served by such a minimal evidentiary foundation: "the taxpayer may face practical difficulties in attempting to refute the Commissioner's assertion that the taxpayer received unreported income."  By the time this case came to trial (indeed upon receipt of the notices of deficiency), petitioner was informed that respondent had determined that petitioner had unreported income from real estate, the addresses of the real estate in question, the amounts of the omitted income, and the sources of respondent's information.  Petitioner faced no practical difficulties in determining precisely what she had to prove to sustain her assignment of error that "more income than I earned was attributed to me".  She had to prove that she did not own the specific properties in question, did not receive rents in the amounts alleged, or had deductions greater than had been allowed.  True, respondent introduced no third-party records substantiating his claims that petitioner owned rental properties and received rents from them.  We assume that the reason he did not, however, was that in the petition, petitioner did not aver that respondent had failed to link her to an income-producing activity.  The situation here is the same as in Rapp v. Commissioner, 774 F.2d 932 (9th Cir. 1985), where the Commissioner did not introduce underlying third-party records, but the Court of Appeals allowed the Commissioner to rely on the

presumption of correctness since the taxpayer did not directly attack that presumption. Also as in Rapp, petitioner challenged the amount of related deductions respondent had allowed her, which we view as an implicit acknowledgment of the existence of the income-producing property. Rapp lends support to our conclusion that respondent did establish a minimum evidentiary foundation.

Moreover, in the various documents petitioner has filed in this case, she makes statements that we read as her concession that, during the years in issue, she did, indeed, own real property from which she received rental income: To wit, "ALL OF THE 'INCOME' AT ISSUE WAS DERIVED FROM RENT"; "[respondent is] attempt[ing] to put an income tax on Petitioner's rental income"; "Petitioner's real estate rents are not subject to an income tax as a matter of law"; "Well, they were willing to contact former tenants, but they weren't willing to call, for example, the Multnomah County Tax Assessor"; "I have no wages, salaries or profits from my rental property". In Edwards v. Commissioner, 680 F.2d 1268 (9th Cir. 1982), although no specific income was documented, the Court of Appeals upheld the presumption of correctness because the taxpayers had conceded that they owned an income-producing business. We think that a like result is called for here.

Finally, we think that Palmer v. United States, 116 F.3d 1309 (9th Cir. 1997), provides added authority for our decision. In Palmer, the Commissioner had established the taxpayer's income-earning capacity but had no information as to income earned during the middle 2 of the 4 years in question. The Commissioner reconstructed the taxpayer's income for the middle 2 years using average income statistics and the inference that the taxpayer had survived the middle 2 years on income earned during those years. Given the taxpayer's failure to suggest an alternative means of support, the Court of Appeals thought the Commissioner's inference to be reasonable. That reasonable inference, together with the link the Commissioner had shown to an income-earning capacity, provided the minimal evidentiary foundation required by the Court of Appeals. Here, we have found that petitioner owned rental real estate both before and after the years in question. Petitioner has not suggested an alternative means of support during the intervening years, so we think it a reasonable inference that she survived those years using income earned during them. That reasonable inference, coupled with her income-earning capacity (from rental real estate), provides a minimal evidentiary foundation linking petitioner to an income-producing activity.

III. <u>Conclusion</u>

We believe that respondent has provided the required minimal evidentiary foundation linking petitioner to an income-producing activity.  We shall reenter our order and decision in this case.[3]

<u>An appropriate order and decision will be entered</u>.

---

[3]  We remain convinced that a penalty under sec. 6673(a)(1) is deserved.  In the main, petitioner's response to respondent's determination of deficiencies has been to make frivolous or groundless responses, undertaken, we believe, primarily for delay.  Petitioner has asserted absurd, discredited, and misguided tax-protester arguments such as the following: (1) The Internal Revenue Code does not make anyone "liable" for an income tax, (2) the Internal Revenue Code contains no mandatory provisions, and therefore, compliance is voluntary, (3) the Tax Court has no authority to decide matters of law or constitutional issues, and (4) an income tax on petitioner's rents pursuant to <u>Pollock v. Farmers' Loan & Trust Co.</u>, 158 U.S. 601 (1895), is an unapportioned direct tax.  Whether respondent had a basis for his determinations or not (and we believe that he did), those responses are without merit and inappropriate, and petitioner has caused unnecessary work for both respondent and this Court.