Bhagwan D. RAHEJA and Krishna K. Raheja, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 82–1241.

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 12, 1983.*

Decided Jan. 11, 1984.

Rehearing Denied March 7, 1984.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively

Bhagwan D. Raheja, pro se.

Farley P. Katz and Ann Belanger Durney, Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellee.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Petitioners-appellants appeal *pro se* from the decision of the Tax Court sustaining a deficiency determination. We affirm.

I.

In 1980, the Internal Revenue Service issued a statutory notice of deficiency of $349.76 for petitioners' 1974 federal income tax return. This amount represented the net effect of adjustments for partnership distributable income and a partnership capital loss (Mrs. Raheja was a financial partner in a travel agency, Skylab Travel), and the disallowance of a portion of a home office deduction. Petitioners do not contest the correctness of these adjustments. They argue instead that the notice of deficiency should be declared null and void because petitioners were selected for audit in violation of their Fifth Amendment right of due process.

In the petition filed before the Tax Court, petitioners presented three arguments in support of their constitutional claim: their return was not selected for audit by either the Discriminant Function System (DIF)[1] or the Taxpayer Compliance

concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), FED.R.APP.P. (effective Aug. 1, 1979); Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

1. According to the Tax Court Opinion, the DIF is the major audit selection method used by the IRS. It is a statistically-based system by which

Measurement Program (TCMP)[2] computer programs (petitioners' brief on appeal therefore identifies the audit as an illegal search in violation of the Fourth Amendment); petitioners were not notified in advance in writing that their return was selected for audit; and petitioners were subjected to "personal vendetta and discrimination" by the IRS. Only the first two issues were pursued before the Tax Court, and both were rejected by Judge Fay. On appeal, petitioners continue to argue that they had a right to be selected by computer for audit, and should have received advance notification of the audit. Much of petitioners' brief, however, is devoted to the argument that the audit was based on evidence illegally obtained through "outrageous and malicious conduct" by IRS personnel. The brief requests $500,000 punitive damages as well.

Aside from the home office deduction question, petitioners' problems with the IRS apparently arose because of their association with Skylab Travel. According to the Rahejas, the managing partner of Skylab converted partnership assets to personal use, and refused to provide the Rahejas with the partnership financial information necessary for completing their 1974 tax return. The Rahejas therefore requested an extension of time for filing the 1974 return (due April 15, 1975) until October 15, 1975; the earliest document in the record is an August 15, 1975 letter to the IRS expressing thanks for the extension. In this and several subsequent letters to the IRS, the Rahejas urged the IRS to investigate the managing partner of Skylab. The Rahejas assert that an audit of Skylab did eventually take place.

A May 1976 IRS "Referral Report to Audit" form states that the Rahejas had "been contacted several times with no success in securing returns" for 1974 and 1975.[3] This is the only indication in the record of acrimony between petitioners and the IRS.[4] The two returns were finally filed in August 1977 along with a letter describing continuing difficulties with Skylab, and promising an amended return when the partnership information became available. An amended return was filed in April of 1978, and included a tax payment reflecting the Skylab income. The audit initiated in 1976 apparently continued, and resulted in the notice of deficiency issued May 22, 1980. Although the notice refers to Skylab and home office information not reflected on the original return, it appears that the $349.76 deficiency assessed reflects only the home office deduction change, the tax attributable to Skylab having been paid in 1978.

## II.

As a general rule, the Tax Court will not look behind the notice of deficiency to examine the evidence used or the propriety of the Commissioner's motives or of his administrative policy or procedure in making his determinations. *Proesel v. Commissioner,* 73 T.C. 600, 605 (1979); *Greenberg's Express v. Commissioner,* 62 T.C. 324, 327 (1974); *Suarez v. Commissioner,* 58 T.C. 792, 813 (1972). The rationale for this rule is that the Tax Court proceeding is *de novo. Greenberg's Express,* 62 T.C. at 328.

 An exception to the rule against "looking behind" the notice of deficiency is made when an infringement of the taxpay-

---

a computer assigns weights to entries on a tax return based on each entry's deviation from the amount typically deducted by taxpayers in that income bracket. DIF produces a total score for each return. The probability of audit increases with increasing total score.

2. Under the TCMP, returns are selected randomly for intensive audit. These findings are used to make corrections in the DIF formulas.

3. Both returns were filed late due to problems with Skylab, and petitioners' briefs refer to

both tax years. The deficiency judgment, however, is only for 1974, so that is the only year at issue on appeal.

4. Petitioners' appellate brief refers to "repeated and threatening" telephone calls. The brief also alludes to arguments with the IRS over the audit of Skylab; Mr. Raheja refused to sign the audit statement. There is, however, nothing in the record before us about this audit, which is not the subject of this appeal.

er's constitutional rights is alleged and the integrity of the judicial process is at stake. In cases of alleged Fourth Amendment violations, the Tax Court has carefully scrutinized the notice of deficiency and imposed sanctions to discourage reliance on evidence which is not merely inadmissible under the usual rules of evidence (the deficiency determination often rests upon hearsay or other inadmissible evidence), but is constitutionally inadmissible. *Proesel* at 605; *Suarez* at 813. Similarly, while the conscious exercise of some selectivity in criminal prosecution is not in and of itself a constitutional violation, *see Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962), it is possible that selectivity may rise to the level of an equal protection violation. Fundamental to an equal protection defense to prosecution is "proof that the decision to prosecute was based on impermissible considerations such as race, religion, or the desire to penalize the exercise of constitutional rights." *United States v. Peskin,* 527 F.2d 71, 86 (7th Cir.1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976). *See also United States v. Falk,* 479 F.2d 616 (7th Cir.1973) (en banc) (selective enforcement of draft card regulations designed to discourage Vietnam dissent).

Numerous taxpayers have raised Fourth Amendment or equal protection arguments in an attempt to quash notices of deficiency—and have been notably unsuccessful. In *Suarez,* all the evidence on which the notice of deficiency was based was obtained in an illegal search of taxpayer's premises. As a remedy, the Tax Court merely removed the presumption of correctness attached to the notice of deficiency, and shifted the burden of producing and going forward (not the burden of proof) to the Commissioner who had to present independent untainted evidence to sustain the asserted deficiency. In *Greenberg's Express* (alleged selection for audit on the basis of taxpayers' ties to organized crime) and *Foxman v. Renison,* 625 F.2d 429 (2d Cir.), *cert.*

*denied,* 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980) (allegation of selection on the basis of the IRS agent's dislike of dentists who deal with Medicaid patients), even the minor burden-shifting remedy was denied. In no case was the notice of deficiency quashed.

### III.

In light of these standards, it is clear that petitioners have not established grounds for quashing the notice of deficiency. The gist of petitioners' computer selection argument is that computerized audit selection programs were devised to discourage an "unlimited, arbitrary and capricious" use of IRS power, and the IRS is therefore precluded from selecting returns for audit by any other means. Petitioners offer no support for this position. While the DIF makes it possible for the IRS to screen a large number of returns automatically, it in no way restricts the ability of the IRS to investigate a return for reasons other than statistical aberration. It is well-settled that the IRS "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964). In this case the Rahejas were selected for audit because of their own failure to file a return,[5] and because of their involvement with a partnership having difficulty with the IRS. It is not unusual for an IRS investigation of one individual or business to result in investigations of those associated with the business, and we implicitly approved such a procedure in *United States v. Serlin,* 707 F.2d 953 (7th Cir.1983). The failure to select petitioners for audit by means of a computer search does not constitute a violation of their Fourth Amendment rights.

Neither is there any merit to petitioners' argument that they had a constitutional right to written notice of the audit.

---

**5.** Because no return had been filed, petitioners could not have been selected by the DIF or TCMP. The IRS is not required to ignore evidence of non-compliance just because taxpayers have failed entirely to file a return.

They do have a statutory right to written notice of a *second* audit, *see* 26 U.S.C. § 7605(b), but that is not at issue in this case, and petitioners provide no authority for their position concerning first audits.

 Petitioners also do not explain in what way the IRS violated its own procedures in conducting the audits. They allege only that IRS agents in Illinois obtained copies of petitioners' 1974 and 1975 returns from the Kansas City IRS Service Center without the consent of petitioners, and that the agents failed to obtain the consent of their supervisors before proceeding with the audit. The IRS need not even notify taxpayers before initiating a first audit, and certainly do not need to obtain taxpayers' permission before obtaining the internal IRS records sufficient to conduct the audit. Neither do petitioners cite any IRS regulation that requires a supervisor's approval before an agent can conduct an audit. Although it is possible for an agency's failure to follow its own regulations to rise to the level of a due process violation, *see Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974), petitioners have not established that this is such a case.

Finally, there is no basis in the record for petitioners' claim that they were arbitrarily or discriminatorily selected for audit. While petitioners mention in passing that returns should not be selected for audit on the basis of "racial and national prejudice," they do not argue that they were selected because of their nationality (both are from India); that fact became known to the IRS only after petitioners failed to file their 1974 return and sought the assistance of the IRS in dealing with the managing partner of Skylab. It is quite possible that language difficulties lead to some of the frustration that is apparent on both sides of this dispute. That is not to excuse threats and harassment if indeed such occurred, but a

misunderstanding is not to be equated with constitutionally impermissible selective prosecution.[6]

## IV.

In the absence of any support in the record for their constitutional arguments, petitioners cannot prevail in their contention that the notice of deficiency should be quashed. Accordingly, the judgment of the Tax Court is AFFIRMED.

---

**6.** Petitioners' briefs also cite a number of cases standing for the propositions that, *e.g.,* the IRS cannot obtain information by means of illegal searches or electronic surveillance, or otherwise by ruse or trickery. Petitioners do not explain, however, when or how such activities were actually directed at them, and the record

contains no indication that such ever occurred. The record rather indicates a pattern of straightforward (if unpleasant) demands by the IRS for the 1974 and 1975 returns, followed by the Rahejas' refusal or inability to supply the information. We therefore will not speculate about the significance of these case citations.