ARNOLD I. KRAMER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kramer v. Commissioner
Docket No. 42548-85.
United States Tax Court
T.C. Memo 1989-565; 1989 Tax Ct. Memo LEXIS 578; 58 T.C.M. (CCH) 398; T.C.M. (RIA) 89565; October 19, 1989. Joseph D. Wolgel and Sharon Kramer, for the petitioner. James M. Cascino, for the respondent. WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case is before the Court on petitioner's motion for order to bar use of deficiency notice and respondent's notice of objection thereto. [1]
In the deficiency notice dated August 29, 1985, respondent determined deficiencies in, and additions to, tax as follows: Additions To Tax
Year
Deficiency
Section 6653(a)
Section 6651(a)(1)
1976
$101,585
$5,079 $25,396 1977
47,067
2,353
11,767
1978
174,270
8,714
43,568
1979
6,098
305
1,525
*579 Petitioner contends that the deficiency notice is invalid on its face and that respondent's failure to follow his own administrative procedures amounts to unconstitutional conduct by respondent. FINDINGS OF FACT Petitioner was a resident of Evanston, Illinois, when he filed the petition in this case. Prior to issuance of the deficiency notice in this case, in April of 1979, Berle Littman (Agent Littman), a special agent for the Criminal Investigation Division of the IRS, began an investigation of petitioner's tax liability. Agent Littman conducted his investigation in conjunction with Carl Humowiecki (Agent Humowiecki), a revenue agent specially assigned to the criminal division. In the course of their investigation, both agents met with petitioner on several occasions to request documentation of his income and expenses. Because petitioner, an attorney with an accounting degree, was uncooperative, they obtained most of their information from summonses issued to banks in which petitioner had accounts. Following this investigation, in August of 1981, Agent Humowiecki completed preparation of a revenue agent report (1981 RAR) with respect to petitioner's income, expenses and *580 tax liability for the years 1976 through 1979. In August of 1982, attorneys from the Criminal Section of the Department of Justice met with petitioner's representatives as part of their process of evaluating petitioner's case for criminal prosecution. The purpose of the meeting was to allow petitioner to present any evidence or defenses on his behalf. Petitioner's representatives alleged that petitioner had net operating losses from prior years which could be carried forward to eliminate his tax liability. They were unable to document these losses and admitted that they had been trying unsuccessfully for three years to obtain the documentation from petitioner. Petitioner filed his tax returns for 1976 through 1979 in September of 1983. The gross income figures on these returns were greatly in excess of the amounts in the 1981 RAR but because of higher deductions and net operating loss carryovers, the returns reflected no tax liability. The gross income indicated on the 1981 RAR and the tax return as filed is as follows: Gross Income
per 1981 RAR
per return
1976
$215,766
$494,716
1977
137,585
259,186
1978
287,568
1,076,915
1979
51,374
980,711
*581 In December of 1983, petitioner was convicted of four counts of wilfully failing to file timely income tax returns for the years 1976 through 1979 and one count of filing a false document. In February of 1984, petitioner was sentenced to four consecutive one year prison terms and five years probation and was fined $10,000. After a hearing, the Parole Commission classified petitioner as a "Category 5," a parole classification which includes tax offenses in which "the amount of the tax evaded or evasion attempted is more than $100,000 but not more than $500,000." 28 C.F.R. sec. 2.20-501(b). Pursuant to Category 5 guidelines, the Parole Commission recommended that petitioner serve 36 months before parole. After petitioner's conviction, Nathaniel White (Agent White), an employee of the Chicago District Examination Division of the IRS, was assigned petitioner's file to determine petitioner's civil tax liability. Agent White reviewed the 1981 RAR and other exhibits in petitioner's file. He also reviewed the tax returns petitioner filed for 1976 through 1979. Agent White did not allow the net operating losses which petitioner carried forward to his 1976 and 1978 amended returns *582 because the returns from which the losses arose never had been signed and respondent did not consider them valid returns. Agent White's government time sheets indicate that he spent 67 hours working on petitioner's file between June 10, 1985 and August 2, 1985. During the second or third week in August of 1985, Philip Turner (Turner), the Assistant U.S. Attorney who prosecuted petitioner's criminal case, called Agent White's supervisor to request that he expedite the mailing of petitioner's deficiency notice. Turner wanted the deficiency notice to be issued by August 29, 1985, so that it would be available at the hearing on petitioner's motions attacking the basis for his sentencing. On August 28, 1985, petitioner's case file was sent to Michael Gibbons (Gibbons) so that he could process the notice of deficiency. Because Agent White had made no changes to the 1981 RAR, the figures in this report were used in the notice of deficiency. Gibbons' staff prepared, typed and proofread the deficiency notice and it was issued on August 29, 1985. After his sentencing petitioner conducted extended litigation to challenge his conviction, sentence, and parole decision. Much of this litigation *583 is summarized in Kramer v. Jenkins,803 F.2d 896 (7th Cir. 1986). In that case the Court of Appeals upheld the Parole Commissioner's treating the deficiency notice as conclusive evidence of petitioner's tax liability in determining petitioner's eligibility for parole. The Court of Appeals stated (page 901) that "The IRS offers taxpayers an opportunity to discuss and present evidence on tax liability before it issues a deficiency notice" and that "This opportunity to be heard is at least as much as the Constitution demands for parole factfinding." On petition for rehearing, in Kramer v. Jenkins,806 F.2d 140, 141 (7th Cir. 1986), the Court of Appeals remanded to the District Court to "allow Kramer to prove, if he can, that he did not have an opportunity to present his contentions to the IRS 'at a meaningful time and in a meaningful manner.'" On remand, the District Court found that respondent gave petitioner a meaningful opportunity to be heard prior to the issuance of the deficiency notice. Kramer v. Jenkins, No. 85 C 9926 (N.D. Ill., Feb. 13, 1987), affd. without published opinion 860 F.2d 1082 (7th Cir. 1988). The District Court *584 stated that (slip op. at p.10): Although the IRS did not issue a thirty-day letter, it contacted Kramer many times over a period of years, made countless request for documents, and has always, even up to the present date, been ready and willing to receive the much talked about, but never produced, exculpating documents. Therefore, the court finds that the procedures the IRS actually used afforded Kramer the process due him.
The District Court's denial of petitioner's petition for a writ of habeas corpus was affirmed by the Court of Appeals. OPINION In the present deficiency proceedings, petitioner seeks to bar respondent from using the statutory notice. Petitioner contends that respondent's failure to issue a 30-day letter or provide an administrative hearing as provided in the Statement on Procedural Rules sections 601.105 and 601.106 and the expedited issuance of the deficiency notice at Turner's request amount to unconstitutional conduct by respondent. Petitioner also contends that the deficiency notice is invalid on it face. Petitioner asks us to consider the conduct and motives of respondent in preparing and issuing the deficiency notice. As a general rule, this *585 Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974); Raheja v. Commissioner,725 F.2d 64, 66 (7th Cir. 1984), affg. a Memorandum Opinion of this Court; Vallone v. Commissioner,88 T.C. 794, 806 (1987); Jackson v. Commissioner,73 T.C. 394, 400 (1979). The rationale for this rule is that a trial before the Tax Court is a proceeding de novo. Raheja v. Commissioner,supra at 66. An exception is made on occasion when there is substantial evidence of unconstitutional conduct by respondent in connection with the determination of a deficiency. Frazier v. Commissioner,91 T.C. 1, 9 (1988); Greenberg's Express, Inc. v. Commissioner,supra at 328. If in "looking behind" the deficiency notice we find that respondent did not have sufficient information to make a determination, the notice will not be afforded the usual presumption of correctness. Respondent *586 then would have the burden of going forward with the evidence. Jackson v. Commissioner,supra at 401. As indicated below, in the present case petitioner has not shown sufficient evidence of unconstitutional conduct to warrant our looking behind the deficiency notice. On the record here, even if we were to look behind the deficiency notice, respondent plainly did have sufficient information to make a determination of petitioner's tax liability. Respondent did not violate petitioner's due process rights by failing to follow the rules set forth in the Statement of Procedural Rules. These rules are issued by the Commissioner without the need for approval by the Secretary. The rules serve merely as guidelines for the conduct of the internal affairs of the Internal Revenue Service. The authority of the Commissioner to issue such rules derives from 5 U.S.C. section 301 (1982) which authorizes him to promulgate rules "for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." These procedural rules are directory *587 and not mandatory in nature and do not confer any rights upon petitioner. Boulez v. Commissioner,810 F.2d 209, 214-215 (D.C. Cir. 1987), affg. 76 T.C. 209 (1981); Cleveland Trust Co. v. United States,421 F.2d 475, 481-482 (6th Cir. 1970). Petitioner was not prejudiced by the absence of a formal administrative review. Petitioner has had the opportunity since 1979, when the criminal investigation began, to present evidence of his tax liability. Petitioner or his representatives had numerous meetings with respondent's agents. The testimony of those agents indicates that petitioner was uncooperative and failed to document his claims. Petitioner testified before the District Court that he provided criminal investigators with all relevant documents and that there were no other documents which he wished to offer on the issue of his tax liability. We see no merit in petitioner's contention that his due process rights were violated when the issuance of the deficiency notice was expedited. The deficiency notice was prepared from the 1981 RAR. Agent White spent 67 hours reviewing the 1981 RAR and the other information in petitioner's *588 file before the deficiency notice was issued. There is no indication that petitioner provided any new evidence after the 1981 RAR had been prepared other than the tax returns for 1976 through 1979 which he filed in 1983. These returns are petitioner's self-serving and unsubstantiated statements of his tax liability, and Agent White examined them in the course of preparing the deficiency notice. According to White's supervisor once an RAR is in a taxpayer's file, the notice of deficiency can be prepared in four to eight hours. Assistant U.S. Attorney Turner did not suggest the figures to be used in the deficiency notice nor the manner in which it was to be prepared. Under these circumstances we are not persuaded that respondent's agents acted improperly in issuing the notice of deficiency, or that they would have determined a different tax liability for petitioner had they acted less swiftly. Petitioner relies on Scar v. Commissioner,814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983). We find the holding in Scar inapplicable to the facts in this case. In Scar, respondent conceded that the tax shelter referred to in the deficiency notice *589 had no connection to the taxpayers or their returns and that the notice was invalid on its face. The Court of Appeals held that respondent must determine a deficiency with respect to the particular taxpayer to whom the notice is issued. In the present case the determinations set forth in the notice of deficiency were made with respect to petitioner. The notice of deficiency is valid on its face. Neither the Internal Revenue Code nor the regulations specify the form required for a valid notice of deficiency. Foster v. Commissioner,80 T.C. 34, 229 (1983), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985). The notice must at least indicate that the Commissioner has determined a deficiency for a particular year and specify the amount of the deficiency. Benzvi v. Commissioner,787 F.2d 1541, 1542 (11th Cir. 1986), affg. an order of this Court. The deficiency notice in this case meets those requirements. Although the deficiency was not determined from the returns which petitioner filed in 1983, respondent did not act unreasonably in failing to rely on those returns. The gross income figures in petitioner's returns were *590 substantially higher than the amounts in the 1981 RAR. Respondent chose to rely on the lower income and expense figures in the 1981 RAR rather than using petitioner's gross income figures and disallowing his higher, but undocumented, loss and expense figures. Respondent's personnel reviewed the tax returns and much other information concerning petitioner's income, which they had ascertained through summonses issued to banks in which petitioner had accounts and through other investigation. They afforded him many opportunities to discuss his income and expenses and to provide documentation. Respondent served a valid deficiency notice on petitioner. Petitioner has had the opportunity to request a prompt trial before this Court to determine his tax liability. At the hearing on this motion the Court repeatedly asked petitioner whether he wished an expedited trial with respect to his taxes for 1976-1979, but petitioner declined these offers. We conclude that petitioner's motion should be denied and that his case should proceed to trial in due course. An appropriate order will be entered.
Footnotes
1. This case was assigned pursuant to section 7443A and Rule 180 et seq. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩