**O.S.C. & ASSOCIATES, INC., d.b.a. Olympic Screen Crafts, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**No. 97–71199.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1999.

Decided Aug. 16, 1999.

Daniel L. Casas, Reynolds Price Casas & Riley, Los Altos, California, for the petitioner-appellant.

Loretta C. Argrett, Tax Division, United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before: WIGGINS, TASHIMA and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

A corporation's payment of compensation to employees is tax deductible by the corporation; its payment of dividends to shareholders is not. In this case, we once again examine the circumstances under which deductions for payments to shareholder-employees of a closely-held corporation, ostensibly as compensation for services, will be disallowed as disguised dividends. In *Elliotts, Inc. v. Commissioner*, 716 F.2d 1241 (9th Cir. 1983), we applied a two-part test to deter-

mine the deductibility of such payments: reasonableness of amount and compensatory intent. We said, "In the rare case where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend, the inquiry may expand into compensatory intent apart from reasonableness." *Id.* at 1244.

This is such a case. We affirm the tax court's finding that OSC's payments to Blazick and Richter, whether or not reasonable in amount, were not intended as compensation. They were dividends in disguise.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1970, Allen Blazick bought a silk-screening business for $180.00. He and his wife operated the business on a part-time basis from their two-bedroom apartment while he continued to go to school and work at a bank during the day. As the business grew, Blazick hired Steven Richter, his brother-in-law, to assist with manufacturing. He was paid $2.00 per hour when they could afford it. In 1976, Blazick and Richter's enthusiasm, energy and hard work started to pay off—Blazick landed Safeway Stores as a client. It is undisputed that Blazick and Richter continued to bring their extraordinary talent, dedication, and energy to the business, and it is undisputed that the business prospered remarkably as a direct result of their personal efforts. By 1991, Olympic Screen Crafts had moved from Blazick's kitchen table to a 65,000 square-foot plant, had over 200 employees, and grossed over $13 million a year.

In 1982, the business was incorporated. Blazick became OSC's President and Chief Executive Officer, and owned 90% of its stock; Richter became OSC's Vice President, and was issued the remaining 10% of its stock. Blazick's wife served as the secretary and treasurer.

Three years after OSC incorporated, it adopted an incentive compensation plan. According to OSC, its purpose was "to recognize and compensate Blazick and Richter for their distinct and different contributions to the business." The incentive plan was developed by Leo Rosi, Blazick's college acquaintance and OSC's long-time certified public accountant. Blazick and Richter were the plan's only participants. Under the terms of the plan, the amount of incentive compensation was to be determined at the end of each fiscal year by first calculating a hypothetical gross margin. The gross margin was calculated by multiplying OSC's actual total sales by an adjusted industry gross margin ratio. The total incentive compensation pool consisted of the difference between OSC's actual gross margin and the hypothetical adjusted industry gross margin.

The plan expressly provided that payments from the incentive compensation pool would be made "according to stock ownership." It directed that after specific deductions were taken from each participant's share, 90% of the total incentive compensation pool would be allocated to Blazick, with the remaining 10% going to Richter. Each year, Blazick's incentive compensation was to be reduced by any inventory shortages in excess of $100,000 and by any bad debts. Likewise, Richter's incentive compensation was to be reduced by inventory spoilage in excess of $100,000 and production costs in excess of $100,000. As a practical matter, this formulation resulted in the corporation distributing nearly all (between 82% and 94%) of its net income as incentive payouts to Blazick and Richter in the years in question. All of the incentive compensation paid out to Blazick and Richter was deducted as compensation under § 162(a) of the Internal Revenue Code. The IRS disallowed a sub-

stantial portion of those deductions.[1]

As the company's accountant, Rosi performed the hands-on implementation of the plan. He acknowledged that the method he used to calculate the corporation's cost of goods sold was not in accordance with generally accepted accounting principles. He also testified that in 1990 and 1991, he "miscalculated" OSC's gross profits resulting in an arbitrary increase to the incentive compensation pool. He also acknowledged his failure to make other adjustments required by the plan, thus increasing the distributions to Blazick and Richter.

OSC never paid or declared a dividend, despite the fact that in 1988 or 1989, the years immediately following the incentive plan's implementation, Rosi specifically advised OSC to pay them. Rosi testified that Blazick was strongly opposed to the idea. Rosi testified that because of Blazick's reaction to his advice, he never brought it up again. Blazick's antipathy to dividends also was reflected in a credit memorandum prepared by an officer of Union Bank in 1992. It contained the following statement:

> [Blazick's] salary for 1991 was over $1.8MM. The reasoning behind the higher salary is taxable income. Mr. Blazick does not intend to be taxed twice for the profitability of his business. He contends taking the higher salary will in-

crease his personal tax liability, but this rate is lower than the corporate tax rate.

For each of the tax years in issue, OSC deducted the full amounts paid to Blazick and Richter under the incentive plan. The IRS disallowed most but not all of it. The IRS assessed back taxes on the disallowed amounts and assessed an accuracy-related penalty pursuant to 26 U.S.C. § 6662(a).[2]

At trial before the Tax Court, OSC offered considerable evidence of Blazick and Richter's extraordinary hard work and unique skills, and of the corporation's phenomenal growth and better-than-average performance due to their personal efforts. Nevertheless, the Tax Court found that the plan allocations were not made with compensatory intent. It found that the plan "was both designed and manipulated to direct the flow of corporate earnings to Messrs. Blazick and Richter and to disguise such payments as compensation." On that basis, it also upheld the imposition of a penalty for negligence.

## I Deductibility of Compensation

Section 162(a)(1) of the Internal Revenue Code permits a corporation to deduct "a reasonable allowance for salaries or other compensation for services personally rendered." 26 U.S.C. § 162(a)(1). The payment of dividends to shareholders, however, is not deductible. When pay-

---

1. For the tax years at issue, OSC paid Blazick and Richter the following base salaries and bonuses pursuant to the incentive plan:

| | 1990 | 1991 | 1992 |
|---|---|---|---|
| **Blazick** | | | |
| Base salary | $155,372 | 175,485 | 173,372 |
| Incentive Distribution | $490,860 (83%) | 1,651,146 (90%) | 1,324,608 (90%) |
| TOTAL | $646,232 | 1,826,631 | 1,497,980 |
| | | | |
| **Richter** | 1990 | 1991 | 1992 |
| Base salary | $57,791 | 64,616 | 60,000 |
| Incentive Distribution | $98,036 (17%) | 183,461 (10%) | 149,179 (10%) |
| TOTAL | $155,827 | 248,779 | 209,179 |
| | | | |
| Total Compensation Claimed Deductible | $802,058 | 2,075,068 | 1,707,159 |
| | | | |
| Amount Disallowed by IRS | $357,453 | 1,580,631 | 1,198,677 |
| | | | |
| Amount Allowed by IRS | $444,606 | 494,437 | 508,482 |

The numbers in brackets reflect the percentage of the distribution from the incentive plan that each shareholder received during the respective tax years.

2. OSC does not raise and we do not address any apportionment issue, i.e., whether any further portion of the disallowed part of the incentive compensation should have been allowed as reasonable compensation. OSC's contention is that the entirety of the claimed amounts of incentive compensation should have been allowed.

ments are made to an individual who is *both* a corporate employee *and* a principal shareholder, a two-prong test is applied to determine whether the distribution is truly compensatory. First, the amount of compensation must be reasonable; second, the payment must be purely for services, or have a purely compensatory purpose. *Elliotts*, 716 F.2d at 1243; *Nor–Cal Adjusters v. Commissioner*, 503 F.2d 359, 361–62 (9th Cir.1974). Factual findings of the Tax Court are reviewed for clear error. *Delk v. Commissioner*, 113 F.3d 984, 986 (9th Cir.1997). The clear error rule applies to the "Tax Court's findings of fact, derived from application of the appropriate factors," in disguised dividend cases. *See Elliotts*, 716 F.2d at 1245.

In *Nor–Cal*, a closely-held corporation that had never declared or paid dividends deducted as compensation "bonuses and administrative salary" paid to its president, vice-president, secretary and treasurer who, together, owned 100% of the company's stock. "Each of the bonus payments and administrative salary made by Nor–Cal to its four officer-shareholders during the year in issue was exactly proportionate to the recipient's stockholding in Nor–Cal." *Id.* at 361. We affirmed the Tax Court's ruling that the payments in issue were disguised dividend distributions rather than payment for services rendered, *id.* at 362, and we upheld its reliance on the following factors:

1. The bonuses were in exact proportion to the officers' stockholdings.
2. Payments were in lump sums rather than as the services were rendered.
3. There was a complete absence of formal dividend distributions by an expanding corporation.
4. The system of bonuses was completely unstructured having no relation to services performed.
5. The company's consistently negligible taxable income was an indication that the bonus system was based on funds available rather than on services rendered.

6. Bonus payments were made only to the four officer-stockholders, no other employees.

*Id.* at 362.

We addressed this problem again in *Elliotts*. There, the corporation paid Edward Elliott, who was both its CEO and only shareholder, a $24,000 annual salary plus a year-end bonus of 50% of net profits. The total paid by Elliotts, Inc. to Edward Elliott approached $200,000 a year, which the corporation deducted in full as compensation. The IRS determined that this amount exceeded what could be deemed reasonable compensation, that it contained a disguised dividend, and that only $65,000 a year could be deducted as payment for services.

On appeal, we started with the premise that under § 162(a)(1), a corporation may deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered." We also acknowledged the two-prong test for deductibility: "(1) the amount of the compensation must be reasonable and (2) the payments must in fact be purely for services." 716 F.2d at 1243. We noted that intent is subjective and difficult to prove and *usually* can be inferred if the amount is reasonable, but not *necessarily* so.

> The existence of a compensatory purpose can often be inferred if the amount of the compensation is determined to be reasonable under the first prong. For these reasons, courts generally concentrate on the first prong—whether the amount of the purported compensation is reasonable. Courts have generally not delved into whether a compensatory purpose exists under the second prong *except in those rare cases where the Commissioner has come forward with evidence that purported compensation payments, although reasonable in amount, were in fact disguised dividends.*

*Id.* (internal citations omitted) (emphasis added).

We specifically held that "where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend, the inquiry may expand into compensatory intent apart from reasonableness." *Id.* at 1244.

■■ That brings us to the present case. OSC would have had the Tax Court fixate entirely on the reasonableness of the amounts involved and then draw an inference of compensatory intent, without regard to the other evidence. However, as we recognized in *Elliotts,* if there *is* evidence that the payments contain disguised dividends, the corporation must separately satisfy *both* the reasonableness *and* the compensatory intent prongs of the test. Reasonableness alone will not suffice.

The Commissioner did indeed come forward with overwhelming evidence of disguised dividends, evidence that fully supported the Tax Court's conclusion that the plan allocations were not intended as compensation, regardless of whether the amounts could be justified as reasonable. The Tax Court relied on several factors in finding disguised dividends in this case:

First, the percentages of OSC's net income paid to its two employee-shareholders was high, between 81% and 94% during the years in question. As we observed in *Elliotts,* if the bulk of corporate earnings are paid out as bonuses or the like, that is a strong indication that profits are being siphoned out of the company disguised as compensation. *See id.* at 1243.

Second, OSC *never* paid or declared a dividend. Although not a dispositive factor, it is relevant in light of the history of profitability and Rosi's rejected advice to pay dividends.

Third, Rosi manipulated the actual implementation of the plan to increase the allocations above what the plan itself authorized.

Fourth, the design of the plan itself was inconsistent with compensatory intent: (a) it applied only to the corporation's share-holders and no other employees; (b) payments were calculated with reference to their proportionate stock ownership; and (c) the method of calculation was not based on the value of services rendered, but was structured to distribute every dollar of gross profit in excess of the hypothetical gross profit.

Because these findings are not clearly erroneous, the Tax Court's determination that OSC's incentive plan payments were not made with compensatory intent must be affirmed.[3]

**II Negligence Penalty**

■■ OSC contends that the Tax Court clearly erred in concluding that its underpayment was attributable to negligence. Once an underpayment of taxes is established, the Commissioner's determination that underpayment was due to negligence is presumptively correct and must stand unless OSC can establish that it was not negligent. *See Hall v. Commissioner,* 729 F.2d 632, 635 (9th Cir.1984). This Court reviews the Tax Court's determination for clear error. *Wolf v. Commissioner,* 4 F.3d 709, 715 (9th Cir.1993).

■ The Tax Court concluded that OSC failed to exercise ordinary care in attempting to comply with the Internal Revenue Code. The record establishes that OSC's incentive plan was designed to direct the flow of corporate earnings to its shareholders. Further, OSC ignored the advice of its accountant to pay dividends. Because OSC has presented insufficient evidence to overcome the presumption of negligence, we affirm the Tax Court's penalty assessment.

**AFFIRMED.**

WIGGINS, Circuit Judge, dissenting:

I respectfully dissent from the well-written Majority Opinion. I believe that an apportionment between the allowed amount for deductible compensation and non-deductible disguised dividend pay-

---

3. Because we affirm the Tax Court's finding on lack of compensatory intent, we need not address OSC's evidentiary objections relating to the evidence of reasonableness.

ments was required in this case. Although the Majority's affirmance of the Tax Court creates a de facto apportionment, I believe that the regulations entitled the taxpayer to an apportionment *by the Tax Court* as part of the Tax Court's redetermination of the taxpayer's tax liability.

## I

It cannot be doubted that the so-called "incentive compensation plan" developed by the taxpayer was nothing more than a ham-handed attempt to characterize distributions of corporate profits, which otherwise are non-deductible dividend payments, as compensation payments to the shareholder-employees Blazick and Richter. The Majority correctly finds that the Commissioner provided "overwhelming evidence of disguised dividends." Maj. Op. at 1120–21. Given this showing by the Commissioner, there are two issues on appeal. The first issue is whether the taxpayer can deduct some portion of the incentive compensation payments, even though the payments contained disguised dividends. The second issue is what the Tax Court was required to do in determining what amount of the incentive compensation payments, if any, was deductible as reasonable compensation, even though the incentive compensation payments con-

tained disguised dividends. The relevant Treasury Regulations make clear that the taxpayer is allowed a deduction for that portion of the incentive compensation payments equivalent to a reasonable compensation, even though the purported compensation payments were not made solely for a compensatory purpose. In light of what occurred during the proceedings in the Tax Court, after the Tax Court determined that the purported compensation payments were not made with the requisite compensatory intent, that Court was obligated: (1) to determine the amount equal to a reasonable compensation; (2) to allow the taxpayer a deduction for that amount; and (3) then to disallow the deduction for the amount of the payments that exceeded that reasonable amount. For some unknown reason, the Tax Court ignored its obligations and affirmed the Commissioner's determination. By misunderstanding, or ignoring, the relevant Treasury Regulations, the Tax Court managed to affirm the Commissioners's determination even after the Commissioner conceded that substantially more compensation should have been reasonable than was allowed in the notice of deficiency. Because the Tax Court's approach was inconsistent with the relevant Treasury Regulations, I would reverse the Tax Court.[1]

---

1. The Majority suggests that O.S.C. has not raised the apportionment issue. I believe that this conclusion, though understandable because of the poor quality of the parties' briefs, is mistaken and that O.S.C. raised the apportionment issue. I believe that the difficulty concerning what O.S.C. actually raised in its brief results from O.S.C.'s reliance upon our opinion in *Elliotts, Inc. v. Commissioner*, 716 F.2d 1241 (9th Cir.1983), as the basis of the required apportionment, rather than the Treasury Regulations. In *Elliotts*, we held that when the Tax Court was faced with disguised dividends that involved unreasonable compensation, the Tax Court should determine the reasonable amount of compensation, allow a deduction for the reasonable amount and disallow the deduction to the extent the payments exceeded the reasonable amount. *See Elliotts*, 716 F.2d at 1248. O.S.C., relying upon our decision in *Elliotts*, has claimed that the Tax Court should have utilized the five-factor test established in *Elliotts* and allowed a deduction for the reasonable amount of

compensation paid to Blazick and Richter. Although this argument was somewhat opaque in Appellant's Opening Brief, the Commissioner clearly understood the argument and responded that no apportionment is required if the payments were made without compensatory intent: "As is evident throughout taxpayer's brief, taxpayer apparently fails to comprehend the ultimate basis for the Tax Court's opinion in this case, which is that regardless of whether the payments in issue here were reasonable in amount, they were nonetheless not deductible because they constituted disguised dividends instead of compensation for services actually rendered." Appellee's Brief at 20–21. O.S.C.'s position, which the Commissioner had already responded to in its own brief, was made relatively more clear in O.S.C.'s reply brief: "Even if, as Appellee argues, the Tax Court disposed of this case on the second prong of the test, the Court first had to find of [sic] what amount of compensation O.S.C. could reasonably pay to Blazick and Richter for the

## II

### An Apportionment Was Required

The taxpayer, relying upon our decision in *Elliotts, Inc. v. Commissioner*, 716 F.2d 1241 (9th Cir.1983), claims that even if the incentive compensation payments were disguised dividends, it should be allowed a deduction for an amount equivalent to the reasonable compensation that would have been paid to Blazick and Richter.[2] The taxpayer's reliance on our opinion in *Elliotts* is misplaced because our *Elliotts* opinion addressed the appropriate analysis in cases involving payments made with compensatory intent that were unreasonable in amount. Nevertheless, the relevant Treasury Regulations make clear that even if purported compensation payments were made without the requisite compensatory intent, the taxpayer is still entitled to a deduction equivalent to the reasonable amount of compensation paid to the shareholder-employees.

Section 162(a) of the Internal Revenue Code ("Section 162") allows an employer-taxpayer a deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered." 26 U.S.C. § 162(a)(1). In *Elliotts*, this court indicated that "[t]here is a two-prong test for deductibility under section 162(a)(1): (1) the amount of the compensation must be reasonable and (2) the payments must in fact be purely for services." *Elliotts*, 716 F.2d at 1243. We also recognized that with this two-prong test "[p]roof of the second prong, which requires a 'compensatory purpose,' can be difficult to establish because of its subjective nature" and that therefore "[b]y and

large, the inquiry under section 162(a)(1) has turned on whether the amounts of the purported compensation payments were reasonable." *Id.* at 1243–1244. While the court's inquiry will normally concentrate on the first prong of the test for deductibility, the *reasonableness* of the compensation payments, the *Elliotts* court explicitly reserved the possibility that the court's determination could be based solely on the second prong, the *compensatory purpose* of the payments: "[i]n the rare case where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend, the inquiry may expand into compensatory intent apart from reasonableness." *Id.* at 1245. As the Majority Opinion makes clear, "[t]his is [the rare] case" that we envisioned in *Elliotts*. Maj. Op. at 1118. We, therefore, must decide whether a taxpayer is entitled to deduct any of a purported compensation payment, when the payment was not made wholly for the requisite compensatory purpose. Although we never addressed this issue in *Elliotts*, the Treasury Regulations and existing precedent indicates that the taxpayer is entitled to deduct a portion of the purported compensation payment equivalent to a reasonable amount of compensation.

The Section 162 Treasury Regulations, which were not addressed in the Tax Court's opinion, indicate that even if purported compensation payments were not made solely for a compensatory purpose, only the portion of the payments that exceeds the reasonable amount of compensation is not deductible:

> the incentive compensation payments, the taxpayer has convinced the Majority that this is an all-or-nothing case: either the payments were deductible or they were not. As will be explained in more detail, the relevant Treasury Regulations make this case into something other than an all-or-nothing case. The taxpayer's unreasonable position, however, has cost it the chance to deduct a reasonable amount of compensation because it has confused the Majority and failed to explain the relevant Treasury Regulations.

personal services they rendered." Appellant's Reply Brief at 10. Therefore, I believe that the issue of apportionment was sufficiently raised for us to consider it.

**2.** Incredibly, the taxpayer's counsel has continued to claim that all of the incentive compensation payments were reasonable compensation. Although this type of vigorous advocacy is understandable, it has done the taxpayer a grave disservice. By claiming that the taxpayer is entitled to deduct all of

Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case *the salaries are in excess of those ordinarily paid for similar services* [3] and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it would seem likely that the salaries are not paid *wholly for services rendered,* but that the *excessive payments* are a distribution of earnings upon the stock.

26 CFR § 1.162–7(b)(1)(emphasis added).[4]

As this Regulation makes clear, when a purported compensation payment to a shareholder-employee is not made for a compensatory purpose, because the payment is "not in fact as the purchase price of services," the disguised dividend is not deductible. The Regulation also makes clear that the disguised dividend is "the excessive payment" because it is the excessive portion of the purported compensation payment that is "not paid wholly for services rendered." It is the excessive portion of the purported compensation payment that is actually "a distribution of earnings upon the stock." Consequently, a determination must be made of the reasonable compensation to be paid to the shareholder-employee. Then the exces-

sive portion of the purported compensation payment can be disallowed as a disguised dividend.

Just as the Section 162 Regulations provide that the excessive portion of purported compensation that is actually a disguised dividend will not be deductible by the corporation, the regulations also provide analogous treatment for the employee-recipient. The regulations indicate that only the excessive portion of the payment will be treated as a dividend rather than as compensation:

> The income tax liability of the recipient in respect of an amount ostensibly paid to him as compensation, but not allowed to be deducted as such by the payor, will depend upon the circumstances in each case. Thus, in the case of excessive payments by corporations, if such payments correspond or bear a close relationship to stockholdings, and are found to be a distribution of earnings or profits, *the excessive payments* will be treated as a dividend.

26 CFR § 1.162–8 (emphasis added).

Although this Circuit has not addressed in a published opinion whether a portion of a purported compensation payment is nevertheless deductible, notwithstanding that the payment was not made solely for a compensatory purpose, the Fifth Circuit has addressed this issue and concluded that the purported compensation should be apportioned between deductible and nondeductible amounts:

**3.** This is an objective measure of reasonable compensation. *See* 26 CFR § 1.162–7(b)(3) ("It is, in general, just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances."). It is this objective determination that may have posed a problem for the Tax Court in this case because the Commissioner's own compensation expert indicated that a significant increase in the compensation allowed by the Commissioner would have been called for.

**4.** Thus under the Treasury Regulations, there is a two-pronged test for deductibility of a purported compensation payment: (1) rea-

sonableness of amount; and (2) compensatory purpose. Under either prong of this test, however, a similar analysis is applied to determine which portion, if any, of the payment is deductible. If the payments exceed the reasonable amount of compensation, the taxpayer is allowed a deduction for the reasonable amount of compensation, but not for the excessive portion. *See, Elliotts,* 716 F.2d at 1248. If the payments were a distribution of corporate profits rather than for a compensatory purpose, the taxpayer is allowed a deduction for an amount equivalent to the reasonable amount of compensation, but not for the portion of the payment that exceeds that amount. *See* Treas. Reg. § 1.162–7(b)(1).

When the payments made are unquestionably at the high end of the spectrum of compensation paid within a field of work, the correlation between stockholdings and payments makes it necessary for the court to consider whether the payments are disguised dividends even if the shareholder-employees contributed services in proportion to their stockholdings. In such a case, it is not unreasonable for the court to conclude that *a portion of the payments* represent compensation for services and *the remainder* represents a disguised dividend.... As the regulations explain, ... *even payments made to shareholders in proportion to their ownership are, as a general rule, improper only if they are in excess of what is usually paid for similar services.*

*Owensby & Kritikos, Inc. v. Commissioner,* 819 F.2d 1315, 1325 (5th Cir.1987) (citing by footnote Treas. Reg. 1.162–7(b)(1) (emphasis added)).

In addition, a rather dated opinion of the Fourth Circuit, interpreting the predecessor provisions in the Internal Revenue Code of 1933, explains the merits of an apportionment approach:

If there is a reasonable basis in the record for isolating that part of the payment which is reasonable compensation for services, we think that a deduction for that part should be allowed. This is true whether the excess is classified as unreasonable compensation or as dividends. There is no basis in reason, the Tax Code, or administrative practice for the insistence that the part which is not deductible fatally infects the part which clearly is.

*Commissioner v. R.J. Reynolds Tobacco Company,* 260 F.2d 9, 12 (4th Cir.1958).

Although our circuit has had only limited opportunity to address the Section 162 Regulations in published opinions, what little we have said has indicated that an apportionment is required. For example, in *Harolds Club v. Commissioner,* 340 F.2d 861 (9th Cir.1965), we rejected a taxpayer's strained reading of the regulations, but said that "[t]he fact that the regulation quoted in note 6 [Treas. Reg. § 1.162–7(b)(1) ] singles out cases where a salary is disallowed *in part* because it is a disguised dividend or payment for property does not alter the requirement that the salary be reasonable to be deductible." *Harolds Club,* 340 F.2d at 867 (emphasis added). This approach to the deductibility of purported compensation payments, which would disallow the deduction only for a portion of the payment, was repeated in our *Elliotts* opinion, where we indicated that "a taxpayer's characterization of such payments [to a shareholder-employee] may warrant close scrutiny to ensure that *a portion* of the purported compensation payments is not a disguised dividend." *Elliotts,* 716 F.2d at 1242 (emphasis added). Therefore, now that we have a case that presented the Tax Court with the opportunity to apportion, I feel that we should follow our existing precedents and the clear mandate of the Treasury Regulations and require that an apportionment take place.[5]

## III

### *The Tax Court Did Not Apportion*

A brief review of the Tax Court's opinion makes clear that the court did not apportion the incentive compensation payments between deductible and non-deductible amounts. The court's opinion makes clear that the court rested its decision

---

**5.** Even if our precedents did not make clear that an apportionment is required whenever purported compensation payments contain disguised dividends, whether because the payments were unreasonable or because the payments were made without the requisite compensatory intent, the Treasury Regulations make clear that an apportionment is required in both cases. *See* Treas. Reg. 1.162–7(b)(1). These Treasury Regulations are binding upon the Commissioner even in the absence of court precedents, *See, e.g., Whiteside v. United States,* 833 F.2d 820, 823 (9th Cir.1987), and even if there are conflicting court precedents. *See Redlark v. Commissioner,* 141 F.3d 936, 939–940 (9th Cir.1998).

solely upon its "conclu[sion] that the plan allocations were not made with compensatory intent and thus did not constitute compensation for services." *O.S.C. & Assoc. v. Commissioner*, 73 T.C.M. (CCH) 3231. Instead of then determining what amount of compensation would have been reasonable, and allowing the taxpayer a deduction for that amount, the court inexplicably found that "[a]s a result [of not being made with compensatory intent], we sustain respondent's determination for each year." *Id.*

The Commissioner, asserting that an apportionment was not required, concedes that the Tax Court never apportioned the incentive compensation payments between a deductible portion (equal to a reasonable amount of compensation) and a non-deductible portion (equal to the amount that exceeds the reasonable amount):

> On appeal, taxpayer argues that the Tax Court erred by failing to address the issue of whether the amounts of compensation paid to Blazick and Richter were reasonable. Taxpayer apparently fails to understand that *the Tax Court did not reach the issue of reasonableness,* and indeed did not need to reach that issue, because it disposed of the case on the other prong of the two-prong test: whether the amounts in issue were disguised dividends rather than compensation for services actually rendered.

Respondent's Brief at 10 (emphasis added).[6]

The Commissioner further concedes that if it is necessary to determine the amount of reasonable compensation that the taxpayer was entitled to deduct, a necessary first step in an apportionment, a remand to the Tax Court is necessary:

> If this Court should hold that the Tax Court finding that the payments to Blazick and Richter pursuant to the ICP were not for services actually rendered is clearly erroneous, then the second prong of the "reasonable compensation" test must be considered, *viz,* whether the total compensation paid to Blazick and Richter was reasonable. *Because the Tax Court did not reach this issue, a remand may be necessary.*[7] ... The Commissioner conceded at trial that Richter's compensation was reasonable, but presented persuasive expert testimony that Blazick's compensation was not reasonable to the extent that it exceeded $472,000, $918,000, and $788,000, respectively, for the years 1990, 1991, and 1992.

Respondent's Brief at 20 n. 8 (emphasis added).

As previously discussed, the relevant Treasury Regulations require an apportionment. That requires a determination of the reasonable amount of compensation that could have been paid to Blazick and Richter. The remaining question is whether the Commissioner could make that determination, in the determination contained in the notice of deficiency, or whether the Tax Court was obligated to make that determination. In this case, I

---

**6.** At oral argument, the Commissioner contended that an apportionment took place in this case. This apportionment supposedly took place because the Internal Revenue Service agent who prepared the notice of deficiency used the *Elliotts* factors for determining reasonable compensation to determine a reasonable amount of compensation and disallowed the excessive portion. As discussed below, this apportionment had to be done by the Tax Court in the course of its redetermination of the taxpayer's deficiency. More importantly, however, that agent never testified before the Tax Court. Instead the Commissioner offered the testimony and report of an expert witness regarding the reasonable

amount of compensation. That witness would have allowed more than a million dollars more in compensation to be deducted than was allowed in the notice of deficiency.

**7.** The Commissioner makes this rather telling concession because the Commissioner claims that an apportionment is not necessary: "The Tax Court did not reach the issue of whether the payments here in issue were reasonable because it had already found that they were not deductible, and therefore there was no clear error in not using the five-factor analysis of reasonable compensation described in *Elliotts.*" Respondent's Brief at 21.

believe that the Tax Court was obligated to make that determination.

## IV

### The Tax Court Had to Apportion

By affirming the Tax Court's decision, which simply sustained the Commissioner's determination that the taxpayer had a deficiency for the tax years in issue, the Majority creates a de facto apportionment because the notice of deficiency only disallowed a portion of the incentive compensation payments. A de facto apportionment, however, is insufficient. Given the evidence before it, the Tax Court was required to determine for itself what amount of compensation should have been allowed as reasonable.

A brief review of tax procedures is necessary in order to understand why the de facto apportionment that results from the Majority Opinion is insufficient in this case. Under the Internal Revenue Code, the Commissioner is given the authority to issue a notice of deficiency if he "determines that there is a deficiency." 42 U.S.C. § 6212. The taxpayer, however, may petition the "Tax Court for a redetermination of the deficiency." 42 U.S.C. § 6213. Under Tax Court Rule 142(a), however, the taxpayer bears the burden of proof before the Tax Court. This is because "[t]he Commissioner's deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation." *Palmer v. United States Internal Revenue Service*, 116 F.3d 1309, 1312 (9th Cir.1997). "If the taxpayer successfully rebuts the presumption that the assessment is correct, the presumption disappears, and the burden of proving the deficiency reverts to the government."

*Adamson v. Commissioner*, 745 F.2d 541, 547 (9th Cir.1984); *cf. Demkowicz v. Commissioner*, 551 F.2d 929, 931 (3rd Cir. 1977) ("Once the taxpayer overcomes the presumption [of correctness] by presenting 'competent and relevant credible evidence,' ... which is sufficient to establish that the Commissioner's determination was erroneous, ... then the Commissioner has the burden of going forward with the evidence.") (internal citations omitted).

In the three tax years at issue in this case, the taxpayer deducted as compensation the following amounts as compensation for Blazick and Richter: $802,059 for 1990; $2,074,708 for 1991; $1,707,159 for 1992.[8] Of these amounts, the Commissioner disallowed the following portion in the statutory notice of deficiency:

| | 1990 | 1991 | 1992 |
|---|---|---|---|
| Claimed Salary | $802,059 | 2,074,708 | 1,707,159 |
| Deficiency | $(357,453) | (1,580,631) | (1,198,677) |
| Allowed Amount | $444,606 | 494,077 | 508,482 |

The taxpayer timely petitioned the Tax Court for a redetermination of the deficiency. In that proceeding, the taxpayer initially bore the burden of proof and had to overcome the presumption of correctness afforded the Commissioner's notice of deficiency. In most cases, the taxpayer fails to carry its burden of proof and cannot overcome the presumption of correctness. *See, e.g., Nor–Cal Adjusters v. Commissioner*, 503 F.2d 359, 362 (9th Cir.1974) (finding that taxpayer failed to satisfy burden of proof). As the Majority noted, however, this is a "rare" case.

During the trial, the taxpayer introduced the report of an expert witness, Robert H. Rosen, to support its contention that the amounts paid to Blazick and Richter were reasonable. The Tax Court would not allow Rosen to testify regarding the reasonableness of the compensation paid to Blazick and Richter, based on com-

**8.** These aggregate amounts were comprised of the following base salary and incentive distributions for Blazick and Richter:

| | 1990 | 1991 | 1992 |
|---|---|---|---|
| **Blazick** | | | |
| Base salary | $155,372 | 175,485 | 173,372 |
| Incentive Distribution | $490,860 | 1,651,146 | 1,324,608 |
| Subtotal | 646,232 | 1,826,631 | 1,497,980 |
| **Richter** | | | |
| Base salary | $57,791 | 64,616 | 60,000 |
| Incentive Distribution | $98,036 | 183,461 | 149,179 |
| Subtotal | $155,827 | 248,0779 | 209,179 |
| TOTAL | $802,059 | 2,074,708 | 1,707,159 |

pensation paid in the commercial printing industry. I agree with the Majority that this decision was not an abuse of discretion. In addition, the taxpayer introduced the testimony of a competitor, Richard Ayers, to support its contention that O.S.C. was an exceptionally-run printer, largely due to the efforts of Blazick.

Without more, I would have to affirm the Tax Court, because the taxpayer would not have overcome the presumption of correctness associated with the Commissioner's notice of deficiency. But the Commissioner's expert witness, Mae Lon Ding, and the Commissioner's subsequent concession regarding the reasonable amount of compensation that could have been paid to Blazick and Richter, transformed this into the rare case in which the Commissioner's own evidence rebutted the presumption of correctness that attached to the notice of deficiency. Ding supplemented her Compensation Expert's Report three times. In the final form, her report would have allowed the taxpayer to deduct a substantially larger amount of compensation than the Commissioner allowed in its notice of deficiency.[9]

Notwithstanding the Commissioner's own concession that a substantially larger amount of compensation than that allowed in the notice of deficiency would have been reasonable, a concession that followed the dramatic reversal of the Commissioner's expert witness' testimony regarding the proper amount of reasonable

compensation, the Tax Court affirmed the Commissioner's deficiency determination as contained in the notice of deficiency. Although the Commissioner's determination in the notice of deficiency is entitled to a presumption of correctness, the notice of deficiency alone is not enough to carry the Commissioner's ultimate burden of persuasion if sufficient evidence is introduced to overcome the presumption of correctness:

> The notice of deficiency does not result in final liability on the part of taxpayer. If the taxpayer files a petition in the Tax Court, liability will be adjudicated prior to payment. 26 U.S.C. § 6213. The notice of deficiency merely hails the taxpayer into court. The Tax Court has as its purpose the redetermination of deficiencies, through a trial on the merits, following a taxpayer petition. It exercises de novo review. *See, e.g., Raheja v. Commissioner,* 725 F.2d 64, 66 (7th Cir.1984). Issuing a notice of deficiency is in many ways analogous to filing a civil complaint.

*Clapp v. Commissioner,* 875 F.2d 1396, 1403 (9th Cir.1989).[10]

The question then becomes whether sufficient evidence was introduced to overcome the presumption of correctness that attaches to the notice of deficiency. Although this circuit has not yet articulated the precise quantum of evidence necessary to overcome the presumption of correctness,[11] I am confident that the taxpayer

---

**9.** In her final report, Ding would have allowed the following amounts as reasonable compensation:

|                         | 1990      | 1991      | 1992      |
| ----------------------- | --------- | --------- | --------- |
| CEO                     | $472,000  | $918,000  | $788,000  |
| Top Operations Executive | $184,000  | $362,000  | $306,000  |

**10.** In this case, the Internal Revenue Service agent who prepared the notice of deficiency did not testify. As a result, the notice of deficiency itself, without testimonial evidence to explain the basis for its determination of a deficiency, is all that the Tax Court could rely upon in affirming the Commissioner's determination, unless it relied upon the testimony of Ding or Ayers. We would be faced with a decidedly different case if the Commissioner

had called the Internal Revenue Service agent, who was on the Commissioner's witness list, to explain the basis of the determination of the deficiency contained in the notice of deficiency.

**11.** Our circuit has not defined what quantum of evidence is necessary to overcome the presumption of correctness and shift the burden of production to the Commissioner because our circuit has placed the ultimate burden of persuasion upon the taxpayer rather than the Commissioner. *Compare Getty v. Commissioner,* 913 F.2d 1486, 1492 (9th Cir.1990) ("When contesting a deficiency determination by the Commissioner, the burden of persuasion rests on the taxpayer."), *with Cebollero v. Commissioner,* 967 F.2d 986, 991 (4th Cir.

met its burden when "[t]he Commissioner conceded at trial that Richter's compensation was reasonable, but presented persuasive expert testimony that Blazick's compensation was not reasonable to the extent that it exceeded $472,000, $918,000, and $788,000, respectively, for the years 1990, 1991, and 1992," Respondent's Brief at 20, n. 8, a concession that would have allowed the taxpayer to deduct $1,343,918 more than allowed in the notice of deficiency.[12]

Therefore, the Tax Court was required to determine de novo whether the taxpayer had a deficiency for the years in question. The court should have determined for itself, based upon the evidence (rather than merely the notice of deficiency), the reasonable amount of compensation that the taxpayer could deduct. Inexplicably, it chose not to, affirming the notice of deficiency and disallowing a $1,343,918 deduction that the Commissioner's witness conceded was reasonable compensation.

Because the Majority affirms the Tax Court, relying upon a de facto apportionment rather than the apportionment that the taxpayer was entitled to, I respectfully dissent.

1992) (indicating that "the Commissioner always has the burden of persuasion as to the amount and existence of any deficiency"). As a result, we traditionally have resolved cases by concentrating upon the preponderance of evidence standard that governs the taxpayer's burden of persuasion, rather than addressing what quantum of evidence is necessary to overcome the presumption of correctness. *See, e.g., Rockwell v. Commissioner,* 512 F.2d 882, 885 (9th Cir.1975) (indicating that "[t]he presumption in favor of the Commissioner is a procedural device which requires the taxpayer to come forward with enough evidence to support a finding contrary to the Commissioner's determination," and that "[t]he burden of proof is another matter."). Given that the only evidence in this case, the reports of the Commissioner's compensation expert witness, as well as a concession by the Commissioner that indicated that more than a million dollars of compensation than allowed in the notice of deficiency would have been reasonable compensation, the taxpayer clearly carried its ultimate burden of persuasion.

12. In its brief before the Tax Court, the Commissioner conceded that "Ms. Ding's final report contains maximum reasonable compensation amounts for Richter that are greater than his actual compensation. Therefore, respondent concedes that Richter's compensation was reasonable in amount." Respondent's Brief before the Tax Court at 22. The Commissioner, recognizing the difficulty of this concession, claimed that "[b]ecause the incentive compensation payments to Richter were disguised dividends, such payments are not deductible even though reasonable in amount." *Id.* n. 5.